David BELL, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 05–08–01471–CR, 05–08–01472–CR, 05–08–01473–CR.

Court of Appeals of Texas, Dallas.

Oct. 26, 2010.

---

■■■■■■

■■■■■■

Katherine A. Drew, James Gerard McDermott II, Dallas County Public Defenders Office, Dallas, for Appellant.

Craig Watkins, Dallas County Dist. Atty., Michael J. Sandlin, Asst. Dist. Atty., Dallas, for State.

Before Justices FITZGERALD, MURPHY, and FILLMORE.

## OPINION

Opinion By Justice FITZGERALD.

A jury found David Bell guilty of two charges of aggravated sexual assault and one charge of sexual performance by a child,[1] and it assessed his punishment at fifteen years' imprisonment on each of the three charges. The trial court stacked the sentences in the two aggravated sexual assault cases. On appeal, Bell contends: the evidence is insufficient to support his conviction for sexual performance; the trial court gave the jury an erroneous supplemental charge concerning mistake of fact; the trial court improperly enhanced Bell's sentences in all three cases; and the trial court's sentences in all three cases represented cruel and unusual punishment. We affirm.

### BACKGROUND

The majority of the evidence relevant to this appeal is found in the testimony of three witnesses: the complainant, Demonica Abron, and Bell himself.

### *The Complainant*

The complainant testified she ran away from home when she was twelve.[2] She met some people at the West End, and she ended up staying with their friends in a hotel room in Dallas. She met Bell when he came to that hotel to visit the people with whom she was staying. The same night the complainant met Bell, she left with him. When they got into his car he told her he was going to show her what she would be doing; she thought he meant just that they would be friends. But Bell had her perform oral sex on him in the car: she "began" in the hotel parking lot and "finished" later at his house. The complainant testified she stayed with Bell for a week or two. She stayed with him initially because she liked staying with him and because she thought she could make money with him. But throughout the time she lived in Bell's house, Bell had her perform oral sex on him once or twice a day, and she grew tired of that.

Bell's girlfriend, Demonica Abron, was living in Bell's house as well. Abron worked as a dancer at Diamonds Cabaret, a nude strip club. Bell drove Abron to work the first day the complainant lived with them, and she rode along with them. The second day, Bell drove the complainant and Abron to the club, and Abron took the complainant inside to fill out an em-

---

1. The aggravated sexual assault charges were numbered F08–71118–T and F08–71119–T in the trial court; they are numbered 05–08–01471–CR and 05–08–01472–CR, respectively, in this Court. The sexual performance by a child charge was numbered F08–71121–T in the trial court; it is numbered 05–08–01473–CR in this Court.

2. The complainant was thirteen years old at the time of trial; she was in the seventh grade.

ployment application. On the third day, the complainant began working at the club. Like the other dancers, the complainant performed twice when it was her turn: the first time dressed in a bikini Abron lent her and the second time nude. Men threw money on the stage, and she picked it up. She gave her money to Abron, who paid some to the club personnel and gave the rest to Bell. Bell drove Abron and the complainant to Diamonds Cabaret each night and picked them up when they finished dancing each morning at four o'clock.

Going to work as a dancer with Abron was not the complainant's idea; it was either Bell's or Abron's. The complainant never liked dancing at the club. She wanted to dance because she wanted to earn money, but she never got to keep any of the money she earned. Bell was in control of the situation; he was "the boss of the house." Eventually, the complainant wanted to leave because of Bell's attitude. When things did not go his way, he would get angry and upset. Bell told her he wanted her to have sex with other men for money. She was afraid of how he would react if she just told him she wanted to leave, so she lied and told him she was going to have sex with a man for money. Bell and Abron took the complainant to meet up with the man, and Bell gave her his phone so she could call him when she was finished. The complainant did not call Bell or return to his home.

### Demonica Abron

Abron testified she "went with" Bell for two years, and she was living with him during the week or two the complainant was there. According to Abron, it was Bell's idea that the complainant should dance at the club. Bell told her to take the complainant to Diamonds Cabaret and "see if they will let her work up there." Abron introduced the complainant to the manager; she believed the complainant probably danced at that club three or four times. Abron confirmed that dancers at the club performed two dances: one with clothing and one nude. The dancing was sexual in nature, and both Abron and the complainant also performed table dances at the club. Abron also confirmed that Bell drove them to and from the club each day. Bell kept all the money they made at the club. She said Bell knew what kind of place the club was because he had been inside it before. No one forced the complainant to dance at the club, but Abron acknowledged Bell had been getting "mean" with the complainant as time went by. The complainant saw Bell and Abron argue, and she knew Bell was in charge. Neither Abron nor the complainant could have just left Bell. The only way the complainant could leave was to escape when Bell thought she was making money. According to Abron, Bell did not work; he paid the bills with her money. She had never worked at a strip club before she met Bell; he encouraged her to do it. At different times, other girls lived with them. Those girls slept with people for money, and all their money went to Bell too. Bell did not force her to prostitute herself at the club, but she had to make money to keep him from being angry with her.

### David Bell

Bell testified in his own defense. He agreed Abron was his girlfriend. But he denied he was her pimp and that he arranged dates for money or forced her to dance at strip clubs. Abron did give him all the money she earned because he was paying all the bills. He took the complainant in because his friend—with whom she had been staying at the hotel—told Bell she had no place to go. Bell denied knowing what the complainant was doing at the club. He acknowledged having oral sex with her twice, but he believed she was

nineteen years old as she had told him. He admitted that, shortly after the complainant arrived, he asked her what she was going to do to start earning some money. He admitted he asked Abron to take the complainant into the Diamonds Cabaret and that he took them both to work and picked them up every day. But he denied he encouraged or forced either the complainant or Abron to do anything. According to Bell, either of them could have left at any time.

## SUFFICIENCY OF THE EVIDENCE

■ Bell raises two specific challenges to the sufficiency of the evidence supporting his conviction for sexual performance by a child.

### Sexual Performance by a Child

The penal code states:

A person commits an offense if, knowing the character and content thereof, he employs, authorizes, or induces a child younger than 18 years of age to engage in sexual conduct or a sexual performance.

TEX. PENAL CODE ANN. § 43.25(b) (West 2003). "Sexual performance" is defined as "any performance or part thereof that includes sexual conduct by a child younger than 18 years of age." *Id.* § 43.25(a)(1). The offense is a second-degree felony unless the child is younger than fourteen years of age at the time of the offense. In that case, the offense is a first-degree felony. *Id.* § 43.25(c). Bell was charged with a first-degree felony because the complainant was twelve years old at the time of the offense.

### Standard of Review

■ Bell frames his issues as challenges to the legal and factual sufficiency of the evidence. The Court of Criminal Appeals has recently directed that:

the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt.

*Brooks v. State,* 323 S.W.3d 893, 894 (Tex. Crim.App.2010) (plurality op.) (referring to *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). This single standard requires the reviewing court to determine whether, considering all of the evidence in the light most favorable to the verdict, the jury was rationally justified in finding guilt beyond a reasonable doubt. *Id.* at 898 (citing *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781). We defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony because the jury is the sole judge of those matters. *Id.* at 899.

### Inducement of Sexual Performance

In his first and second issues, Bell challenges the sufficiency of the evidence establishing that he "employed, authorized or induced" the complainant to engage in a sexual performance. *See* TEX. PENAL CODE § 43.25(b). The State's contention at trial was that Bell induced her to go to work at Diamonds Cabaret as a nude dancer.

The penal code does not define the word "induce." We determine its meaning given its context and the rules of common usage. *See* TEX. GOV'T CODE ANN. § 311.011(a) (West 2005). In this case the parties agree on the same basic definition of induce: to move and lead by persuasion or influence. *See* WEBSTER'S NEW INTERNATIONAL DICTIONARY 1154 (3d ed.1981); *see also Dornbusch v. State,* 156 S.W.3d 859, 866 (Tex.App.-Corpus Christi 2005, pet. ref'd). Thus, we ask whether the evidence was sufficient to support the jury's finding that Bell's conduct brought about the com-

plainant's dancing nude at a strip club through his persuasion or influence. *See Dornbusch,* 156 S.W.3d at 867.

The evidence is undisputed that Bell asked the complainant what she was going to do to start earning some money. The complainant testified it was not her idea to start dancing at the club; it was either Bell's or Abron's idea. Abron testified it was Bell's idea: he told her to take the complainant to the club and "see if they will let her work up there." It is undisputed that Bell drove the complainant and Abron to the club everyday and picked them up at four o'clock in the morning when they finished dancing. It is also undisputed that Bell took whatever money the complainant and Abron earned at the club, whether from dancing or prostitution. Bell denied that he encouraged the complainant to do anything. He testified he did not force the complainant to dance at the club or take her into the club and introduce her to the managers there. But he admitted that he asked Abron to take the complainant into the club. And he admitted taking all the money they earned at the club because he was the one paying the bills. Although the complainant testified she wanted to dance at the club, she also testified she never liked dancing there and only did it for the money. It was Bell who was pressing the complainant to bring in money. It was also Bell who, according to the complainant and Abron, was growing angrier and meaner with the complainant when he did not get his way. Indeed, although Bell testified the complainant could leave anytime, she concluded that the only way she could get away from Bell was by trickery. "[N]owhere in the statute, nor in the common understanding of the word, is there any requirement that

inducement be verbal and explicit." *Dornbusch,* 156 S.W.3d at 867. We conclude that Bell's actions constituted inducement in the commonly understood meaning of the word. *See id.* A rational jury could have concluded beyond a reasonable doubt that Bell induced the complainant to engage in a sexual performance. *See Brooks,* 323 S.W.3d at 898. We overrule Bell's first two issues.

### Awareness of the Complainant's Age

■ In his third and fourth issues, Bell contends the evidence was insufficient to establish he was aware that the complainant was under eighteen years old. The offense of sexual performance applies when the complainant is a child younger than eighteen years of age. *See* TEX. PENAL CODE § 43.25(a)(1), (b).[3] Bell contended at trial that he was not aware the complainant was only twelve years old; he believed she was nineteen. However, Bell's sufficiency-of-the-evidence argument is based upon a questionable legal premise, i.e., that the State was required to prove Bell knew the complainant was underage. Before we address sufficiency of the evidence, we must determine whether the State had such a burden.

■ Bell argues a plain reading of the statute requires imposition of a scienter requirement as to age, because the statute requires the offender to act "while knowing the character and content" of the sexual performance. Bell suggests that the complainant's appearance as a "barely legal" performer could have aroused the sexual interest of some patrons of the club, and thus her age became part of the character and content of her sexual perform-

---

**3.** Bell was charged with a first-degree felony because the complainant was twelve years old at the time of the offense. *See* TEX. PENAL CODE § 43.25(c). But Bell consistently contended he believed the complainant was eighteen or nineteen; thus the distinction between fourteen and eighteen—in terms of proof—was not relevant at trial.

ance. We reject this line of argument. The existence and extent of a scienter requirement is determined by the statute; it cannot be determined by the facts of a particular case. We conclude the statute requires the State to prove the complainant's age at the time of the offense. *See id.* § 43.25(a)(1), (b). And it requires the State to prove the defendant knew the character and content of the child's performance, i.e., to prove the defendant knew the conduct he induced the child to engage in was sexual in nature. *Dornbusch,* 156 S.W.3d at 869 ("The phrase [knowing the content and character thereof] precludes criminal culpability from arising unless the actor knows that the conduct induced is sexual in nature."). The plain language of the statute does not require the State to prove what the defendant believed about the complainant's age.

Our conclusion is consistent with the Court of Criminal Appeals' analysis of other offenses involving children and sexual conduct. In *Johnson v. State,* 967 S.W.2d 848, 849 (Tex.Crim.App.1998), the appellant argued he should not be guilty of indecency with a child unless he knew the victim was under the statutory age. The court rejected his argument, stating it had previously held in cases involving sexual assault of a child that the State is not required to establish the defendant knew his victim was under the statutory age. *Id.* The court declared this rule to be well established, grounded in case law and legislative tradition, and thus dispositive of the appellant's complaint. *Id.* at 849–50. Addressing the legislative portion of that rule's history, the court stated:

> Had the Legislature intended to make a provision regarding the knowledge of the victim's age it would have expressly included that requirement within [the statutory offense]. Absence of such express language proves otherwise.

*Id.* at 849. In the case of the sexual performance statute, the legislative history is telling. Before 1994, the statute included an affirmative defense for a defendant who, in good faith, reasonably believed that the child who engaged in the sexual conduct was eighteen years of age or older. *See* Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3684 (amended 2003) (current version at Tex. Penal Code Ann. § 43.25(f) (West 2003)). That defense was deleted when the Legislature amended the statute in 2003. *See* Act of June 20, 2003, 78th Leg., R.S., ch. 1005, § 5, 2003 Tex. Gen. Laws 2944, 2945. We conclude the Legislature's affirmative rejection of the defense of mistake in the sexual performance context indicates that it did not intend the defendant's belief concerning the age of the victim to be relevant to his guilt or innocence of the offense. *See Johnson,* 967 S.W.2d at 849 ("Absence of such express language proves otherwise.").

The State had no burden to prove Bell was aware the complainant was younger than eighteen—or fourteen—years old. It is legally irrelevant whether Bell was aware of the complainant's true age, and we need not evaluate the sufficiency of evidence supporting an irrelevant fact. Accordingly, we overrule Bell's third and fourth issues.

SUPPLEMENTAL JURY CHARGE

█ In his fifth through seventh issues, Bell complains of the response the trial court gave to this question the jury asked during its deliberations at the guilt-innocence phase of the trial:

> Is the fact that he thought or was misled about her age a factor that he did not know he was committing a crime? Is this a defense?

In response, the trial court instructed the jury that "[m]istake of fact as to the age of

the complaining witness is not a defense." We analyze this legal instruction as a supplement to the jury charge. *See* Tex.Code Crim. Proc. Ann. arts. 36.16, 36.27 (West 2006). Accordingly, we determine first whether error exists. Then, if we find error, we analyze that error for harm. *Ngo v. State,* 175 S.W.3d 738, 743 (Tex. Crim.App.2005).

■ Before the court gave the instruction, counsel for Bell objected:

Well, [1] first of all, you're adding law that wasn't in the original Court's charge and that is my primary objection. Furthermore, [2] it's very clear in your first charge that they could find him guilty even if he didn't know her age and this is just redundant and [3] it is not— never [are the] words "mistake of fact" used in the Penal Code or Code of Criminal Procedure and it's just additional law that's not in the Court's charge.

But on appeal, Bell does not rely on any of those three objections. Instead, in his fifth issue, Bell contends the instruction assumed the truth of a contested issue in the sexual performance case, i.e., whether Bell was aware of the complainant's true age. (Bell argues again here that the complainant's age was an integral element of the "content and character" of her nude dancing; again, we disagree.) A charge that assumes the truth of a controverted issue is a comment on the weight of the evidence and is erroneous. *Whaley v. State,* 717 S.W.2d 26, 32 (Tex.Crim.App.1986). But we have already determined that Bell's knowledge of the complainant's age is not relevant to his guilt on the sexual performance charge. Thus, the trial court did not err in instructing the jury in the sexual performance case that mistake of fact as to the age of the complainant was not a defense. We overrule Bell's fifth issue.

In his sixth and seventh issues, Bell contends the trial court's supplemental in-

struction created error in the two aggravated sexual assault cases because it somehow relieved the State of its burden of proving the age of the complainant. This argument lacks merit. Initially, we stress the instruction was a correct statement of the law of aggravated sexual assault. *See Mateo v. State,* 935 S.W.2d 512, 514 (Tex. App.-Austin 1996, no pet.) (in prosecution for sexual assault or aggravated sexual assault of child, State is not required to allege or prove defendant knew complainant's age). The State was required to prove the complainant's age, and it did so in the most direct fashion possible: it introduced her birth certificate as a trial exhibit. Thus, the State proved what it was required to prove, and the supplemental instruction correctly informed the jury of a matter the State did not have to prove.

■ Bell's issue incorporates an argument that the trial court's failure to define the legal term "mistake of fact" amounted to a comment on the weight of the evidence. Bell contends that—absent a definition—jurors could have believed that if Bell was mistaken about the complainant's age, then they were to find him guilty without considering *any* element of the offense. The court's charge explained that the jury could find Bell guilty only if jurors believed from the evidence beyond a reasonable doubt that all elements of the offense had been established. We generally presume the jury follows the trial court's instructions in the manner presented. *See Colburn v. State,* 966 S.W.2d 511, 520 (Tex.Crim.App.1998). Nothing in the record leads us to conclude jurors ignored the trial court's instructions concerning how to determine Bell's guilt or innocence.

We discern no error in the trial court's supplemental instruction as it relates to the aggravated sexual assault cases. We

overrule Bell's sixth and seventh issues as well.

### "SIMULTANEOUS" ENHANCEMENT OF SENTENCES

■ In his eighth, ninth, and tenth issues, Bell contends the trial court's sentences are illegal because a single prior conviction was "simultaneously used" to enhance Bell's punishment in all three cases. The State did proffer the same 2005 conviction for burglary of a habitation to enhance the penalty range of each of the felonies with which Bell was charged. Thus, the minimum punishment available to the jury in these cases was fifteen years; the jury assessed that punishment in each of the three cases.

The penal code provides that "[t]he use of a conviction for enhancement purposes shall not preclude the subsequent use of such conviction for enhancement purposes." TEX. PENAL CODE § 12.46. Bell argues that this provision limits the repeated use of an enhancement conviction to proceedings that arise later in time. Because punishment ranges in Bell's cases were enhanced simultaneously by the single prior conviction, rather than over time in separate proceedings, he argues the sentences are unauthorized by law and, therefore, are void. But Bell offers no authority supporting this interpretation of section 12.46. Indeed, the authority we find is to the contrary. *See, e.g., Kent v. State*, 879 S.W.2d 80, 84 (Tex.App.-Houston [14th Dist.] 1994, no pet.) ("Under Section 12.46, the same prior conviction or convictions may be used to enhance offenses alleged in indictments tried together."); *Villarreal v. State*, 809 S.W.2d 295, 298 (Tex.App.-Corpus Christi 1991, pet. ref'd) ("Under the present law, the same prior conviction may be used to enhance each indictment tried simultaneously."); *Bonner v. State*, 728 S.W.2d 921, 922 (Tex. App.-Houston [1st Dist.] 1987, no pet.) ("[W]e hold that the same prior conviction can be used to enhance each of the three indictments tried simultaneously.").

We conclude Bell's eighth, ninth, and tenth issues are without merit.

### CRUEL AND UNUSUAL PUNISHMENT

■ In his eleventh, twelfth, and thirteenth issues, Bell contends the sentence assessed in each of his three cases constituted cruel and unusual punishment in violation of his Eighth Amendment rights. Bell's only discernable legal argument under these issues is that he was assessed punishment that was grossly disproportionate to his alleged conduct.

■ To preserve error for appellate review, the record must show Bell made a timely request, objection, or motion. *See* TEX.R.APP. P. 33.1(a)(1). Constitutional rights, including the right to be free from cruel and unusual punishment, may be waived. *Rhoades v. State*, 934 S.W.2d 113, 120 (Tex.Crim.App.1996). Bell made no objection when he was sentenced, and his motion for new trial did not address this complaint. Accordingly, he has not preserved the issue for appellate review. *See Castaneda v. State*, 135 S.W.3d 719, 723 (Tex.App.-Dallas 2003, no pet.).

We overrule Bell's final three issues.

### CONCLUSION

We have decided each of Bell's issues against him. We affirm the judgments of the trial court.