**AFFIRMED; Opinion Filed August 19, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00491-CR

**CLOVIS BRAXTON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 1**
**Dallas County, Texas**
**Trial Court Cause No. F11-00729-H**

# MEMORANDUM OPINION

Before Justices Lang, Myers, and Evans
Opinion by Justice Evans

A jury convicted Clovis Braxton of murder and sentenced him to twelve years' confinement. Appellant complains in a single issue that the evidence against him is legally insufficient to support his conviction. We affirm the trial court's judgment. The background of the case and the evidence adduced at trial are well known to the parties, and therefore we limit recitation of the facts. We issue this memorandum opinion pursuant to Texas Rule of Appellate Procedure 47.4 because the law to be applied in the case is well settled.

### FACTUAL BACKGROUND

Two witnesses claimed they saw appellant participate in the murder of Walter McGee. Elaine Turner, McGee's neighbor and acquaintance for approximately twenty years, stated that she saw appellant fire a pistol at the ground near McGee and then saw appellant and David

Craddock beat McGee with two-by-fours. According to Turner, appellant and Craddock were arguing with McGee about money before they began to assault him. She stated that McGee gave the men the money he had in his pocket, but "it didn't stop the argument." She stated that she picked up the gun that appellant had set down and fired it into the air in an attempt to stop the beating, then she fled to her backyard. She claimed she saw appellant get into a car to leave the scene.

Turner admitted that she had been employed by Craddock to sell drugs out of her house. She also admitted that when she gave a statement to police she never referred to Craddock by his name but instead referred to him as the "stocky guy." She was afraid of what Craddock might do to her. Turner claimed she did not tell police she shot the gun in the air because she was on probation at the time and did not want any trouble for shooting a loaded weapon.

In addition, Turner testified that she used both crack cocaine and heroin at the time of the offense, although she claimed she was sober at trial. She also admitted that she was "paranoid schizophrenic, manic depressant, and bipolar." She stated that she takes medication for her mental illnesses. A video admitted into evidence of her reviewing a photographic lineup shows Turner talking to herself. Turner acknowledged that she sometimes hears hallucinated voices. She stated that, despite the fact that police came to the scene of the attack, she did not reveal what she had witnessed until hours later when she flagged down police officers on horseback patrolling her street. She claimed she was in too much shock after the offense to speak to police.

Turner testified that she had known appellant for about four to five months before McGee's death. She had witnessed Craddock beating McGee with a two-by-four earlier the same week because McGee owed Craddock money. Turner stated that appellant was not present during that assault.

Alonzo Ruben, appellant's cousin, also testified that he witnessed the murder. According to Ruben, McGee[1] had given appellant a "fake" hundred dollar bill and the two were arguing about it when "an old lady and another dude showed up." According to Ruben, the argument escalated and appellant fired a gun at the ground. Ruben recalled the gun being shot just one time. At that point, he tried to break up the argument. Afterward, Ruben claimed, appellant and the other man beat McGee with sticks that looked like lumber. Ruben witnessed the woman go into her house after appellant and the other man beat McGee. Ruben testified that he and appellant left from the scene separately. According to Ruben, when he and appellant talked the next day, both were unaware that McGee had died.

Ruben admitted that he was awaiting trial in an unrelated murder case and was hopeful that his testimony would be viewed favorably by the State. He admitted he had lied to police when he stated that he had not seen a gun during the attack; he claimed he did not "want to bring up a gun" to police but did not know why he lied about the gun. He stated that he had been smoking PCP at the scene. He also admitted that he had been diagnosed as paranoid schizophrenic. He had taken medication for his mental condition on the day of the offense. He admitted that he sometimes experiences aural and visual hallucinations but stated that the medications stop the hallucinations.

When McGee's body was discovered by police, he was still conscious and lying on top of a two-by four. He told officers at the scene "that he had been shooting dice, he had won some money, that he had left the location, he had been followed to [the scene], and two guys had beaten him up and taken his money." He stated only that "two black guys" had attacked him. When an autopsy was performed on McGee's body, it was determined his death was caused by

---

[1] Ruben did not identify McGee specifically, but rather referred to him only as the "old dude." His testimony, however, related to appellant's actions against McGee at the date and time of McGee's murder, so for simplicity we will refer to McGee by his name.

blunt force injuries. The forensic pathologist who testified stated that the injuries could have been caused by a two-by-four or by hands and/or feet.

After appellant was developed as a suspect in the case, police conducted surveillance on his girlfriend in order to arrest him. When officers in marked police vests approached him in the parking lot of an apartment complex, he fled on foot and led police on a chase that lasted close to one hour. When appellant could not be found, they obtained his cell phone information and began to track him through the GPS on his phone. Hours later, they found him hiding under a tractor-trailer in the docking area behind a grocery store. After a small struggle, the officers apprehended appellant. Appellant gave a statement to police in which he admitted that McGee had given him a fake hundred dollar bill. Appellant claimed he had accepted forty dollars from McGee and left McGee without hurting him. Appellant claimed he did not know who had assaulted McGee and he did not know if Craddock had a "beef" with McGee.

A recorded phone call by Craddock to his girlfriend was admitted into evidence. In it, Craddock admitted that he had beaten McGee but also implied that he had done so with another man. He never mentioned appellant's name, but he did state that McGee had given someone a fake hundred dollar bill.

## ANALYSIS

Appellant's sole issue alleges that the evidence against him is insufficient to support his conviction for murder. He specifically complains that the evidence shows only Craddock's guilt for the offense and that the testimony of Turner and Ruben is too unreliable to constitute legally sufficient proof of his guilt. The *Jackson v. Virginia* legal-sufficiency standard is the only standard we apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *See Brooks v. State,* 323 S.W.3d 893, 894 (Tex. Crim. App. 2010) (plurality op.) (discussing *Jackson v.*

*Virginia,* 443 U.S. 307 (1979)). This standard requires the reviewing court to determine whether, considering all of the evidence in the light most favorable to the verdict, the jury was rationally justified in finding guilt beyond a reasonable doubt. *Id.* at 899. We defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony because the jury is the sole judge of those matters. *Id.; Bell v. State*, 326 S.W.3d 716, 720 (Tex. App.—Dallas 2010, pet. ref'd, untimely filed). Under the law of parties, a person is criminally responsible for an offense committed by the conduct of another if, acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *See* TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011).

Viewed in the light most favorable to the verdict, the evidence in this case showed McGee had given appellant a counterfeit one-hundred-dollar bill, and appellant was not happy about it. Appellant first shot a gun near McGee, then he and Craddock beat McGee with two-by-fours before he fled the scene. He then hid from police until he was discovered. The credibility of Turner and Ruben was for the jury to decide, and we must defer to their determination. The evidence is legally sufficient. We resolve appellant's sole issue against him. We affirm the trial court's judgment.

/David Evans/
DAVID EVANS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
120491F.U05

–5–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CLOVIS BRAXTON, Appellant

No. 05-12-00491-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 1, Dallas County, Texas
Trial Court Cause No. F11-00729-H.
Opinion delivered by Justice Evans.
Justices Lang and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 19th day of August, 2013.

/David Evans/
DAVID EVANS
JUSTICE