**REFORM and AFFIRM; and Opinion Filed December 31, 2013.**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-13-00253-CR

**FREDERICK ANDERSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 291st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F12-00400**

## MEMORANDUM OPINION

Before Justices O'Neill, Myers, and Brown
Opinion by Justice O'Neill

Appellant Frederick Anderson appeals his conviction for attempted capital murder. In three issues, he argues (1) the evidence is legally insufficient to prove intent; (2) the trial court erred by including a definition of reasonable doubt in the jury charge; and (3) the trial court erred by informing the jury of good conduct time. In a counter-issue, the State contends the judgment should be reformed to reflect a deadly weapon finding and a finding of true to the enhancement paragraph. As reformed, we affirm the trial court's judgment.

### Background

On November 19, 1983, Mary Smith[1] drove to meet friends at a restaurant on McKinney Avenue in Dallas to celebrate her birthday. She easily found parking in a well-lit area. As she

---

[1] The victim elected to use a pseudonym because of the nature of the case.

was leaving her car, two men ran towards her with a gun. When they reached her, one of the men hit her over the head with the gun and said, "White bitch, open up your car." She screamed and fell to the ground, but the man who hit her with the gun pulled her up by her hair and again insisted that she open her car.

The men took her purse and emptied it looking for money. After the men did not find any money, they threw Smith into the middle of the seats of her car and told her to stay down on the floor. The men got into the car and then drove away with Smith in the fetal position on the floor fearing for her life.

While they drove, the male passenger, who was later identified as appellant, held Smith by her neck and said, "White bitch, you're going to pay for this." The male driver then gave appellant a ski mask and the gun. Appellant put the ski mask over Smith's head, pressed the gun to her neck, reached down her dress, and forcefully squeezed her breast. He asked her if she performed oral sex, and she said no. He said, "Well, white bitch, you're going to do it tonight."

The men drove her to what she thought was a deserted area and stopped the car. The driver put down the seats in the cargo area of Smith's car and threw her to the back. Appellant continued to hold the gun to her head while the driver ripped off her pantyhose. The driver then vaginally raped her. After the driver finished, appellant forced Smith to perform oral sex. Appellant ejaculated in her mouth, and Smith spit it out onto her dress. The driver then raped Smith again.

After he finished a second time, he left Smith in the cargo area and started to drive away. Appellant also stayed in the cargo area and continued to hold the gun to Smith. Appellant asked Smith if she could swim, which made her think they were going to drown her. She told them she was an Olympic swimmer, which was a lie.

The driver eventually slowed the car down, and appellant pushed Smith out of the car onto the concrete median. Smith took the opportunity to run away. She ran into a field

surrounded by a barbed-wire fence. She jumped the fence, and laid down in the fetal position. She heard a gunshot as she ran, but testified that because of the adrenaline rushing through her body, she never felt the bullet hit her.

She waited until the men left before trying to get up. Her right leg would not support her so she crawled to the road and eventually flagged down a driver that stopped and helped her. The two men in the car drove her to the nearest police station, and she was immediately taken to Parkland hospital for medical treatment because she was bleeding out.

While at Parkland, a doctor collected evidence for a rape kit, which included swabs from her mouth and vagina. Smith's dress was also collected as evidence. Smith underwent approximately twelve hours of surgery to repair damage caused by the bullet when it entered her left buttocks and traveled upward, injuring her colon, intestines, and reproductive organs. She stayed in the hospital for ten days.

The two men originally found guilty of the offenses were later exonerated based on DNA testing of the evidence collected. Appellant and another man were identified in 2012 as Smith's attackers. The DNA tested from Smith's dress revealed that appellant was the passenger who forced her to perform oral sex. Based on the DNA results, appellant went to trial and Smith testified again regarding the 1983 sexual assaults. The jury convicted appellant of attempted capital murder and sentenced him to life imprisonment. This appeal followed.

### Sufficiency of the Evidence

In his first issue, appellant asserts the evidence is legally insufficient to prove his intent to commit attempted capital murder because "had appellant harbored such intent he could have simply shot her again," as he was within ten feet of her. The State counters the jury could infer intent from the evidence.

The *Jackson v. Virginia* legal sufficiency standard is the only standard a reviewing court applies in determining whether the evidence is sufficient to support each element of a criminal

–3–

offense that the State is required to prove beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 894 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307) (1979)); *Bell v. State*, 326 S.W.3d 716, 720 (Tex. App.—Dallas 2010, pet. dism'd). This standard requires the reviewing court to determine whether, considering all the evidence in the light most favorable to the verdict, the jury was rationally justified in finding guilt beyond a reasonable doubt. *Bell*, 326 S.W.3d at 720. We defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony. *Id*.

Appellant was charged with attempted capital murder under Texas Penal Code section 19.03(a)(2) and indicted as follows:

> [Appellant] . . . unlawfully then and there, with the specific intent to commit the offense of CAPITAL MURDER, while in the course of committing and attempting to commit KIDNAPPING AND AGGRAVATED SEXUAL ASSAULT of MARY SMITH (pseudonym), do an act, to-wit: attempt to cause the death of MARY SMITH, an individual, by intentionally SHOOTING MARY SMITH WITH A FIREARM, a deadly weapon; said act amounting to more than mere preparation that tended but failed to effect the commission of the offense intended.[2]

The penal code defines criminal attempt as " . . . an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." TEX. PENAL CODE ANN. § 15.01(a) (West 2011). In attempted capital murder, the defendant must have the intent to bring about the desired result, specifically the death of the individual. Thus, a specific intent to kill is a necessary element of attempted murder. *Flanagan v. State*, 675 S.W.2d 734, 741 (Tex. Crim. App. 1984) (op. on reh'g); *Thompson v. State*, 05-99-01189-CR, 2000 WL 1337170, at *4 (Tex. App.— Dallas Sept. 18, 2000, no pet.) (not designated for publication). The specific intent to kill may be inferred from the use of a deadly weapon, unless the manner of its use makes it reasonably

---

[2] The State later abandoned the kidnapping allegation.

apparent that death or serious bodily injury could not have resulted. *Flanagan*, 675 S.W.2d at 744. "Naturally, the most obvious cases and the easiest ones in which to prove a specific intent to kill, are those cases in which a firearm was used and was fired or attempted to have been fired on a person." *Godsey v. State*, 719 S.W.2d 578, 581 (Tex. Crim. App. 1986) (en banc); *Robbins v. State*, 145 S.W.3d 306, 309 (Tex. App.—El Paso 2004, pet. ref'd). The jury may also infer intent from appellant's words or conduct. *Robbins*, 145 S.W.3d at 309.

The record is clear appellant held a deadly weapon to her head during the sexual assault of Smith and that he shot her in the buttocks as she tried to escape. The jury could infer appellant's intent to kill her based on this evidence. *Godsey*, 719 S.W.2d at 581. Moreover, prior to the shooting, appellant told Smith she was going "to pay for this," she was taken to what seemed like a remote area, and appellant asked her if she could swim, which made Smith think the men planned to kill her. The jury could infer these words and actions also showed appellant's intent to kill. Accordingly, appellant's argument that he did not harbor an intent to kill because he was close enough to shoot her again, but did not, is without merit. *See, e.g.*, *Canty v. State*, No. 14-05-00639-CR, 2006 WL 2827312, at *3 (Tex. App.—Houston [14th Dist.] Oct. 5, 2006, pet. ref'd) (mem. op., not designated for publication) (concluding evidence was legally sufficient to support conviction for attempted capital murder despite defendant's argument that he was close enough to shoot officer again but only shot him in his hand).

Viewed in the light most favorable to the verdict, we conclude a rational jury could infer appellant's intent to commit capital murder. We overrule appellant's first issue.

### Inclusion of Reasonable Doubt Definition in the Jury Charge

In his second issue, appellant contends the trial court erred by including a definition of reasonable doubt in the jury charge. He specifically complains about the following language: "It is not required that the prosecution prove guilt beyond all doubt; it is required that the prosecution's proof excludes all reasonable doubt concerning the defendant's guilt." Appellant

–5–

argues this language provides a definition of reasonable doubt in violation of *Paulson v. State*, 28 S.W.3d 580, 573 (Tex. Crim. App. 2000).

This Court, however, has previously considered this instruction and concluded it does not define "reasonable doubt." *See O'Canas v. State*, 140 S.W.3d 695, 702 (Tex. App.—Dallas 2003, pet. ref'd). Instead, we determined the instruction "simply states the legally correct proposition that the prosecution's burden is to establish proof beyond a *reasonable* doubt and not *all possible* doubt." *Id*. Thus, for the reasons stated in *O'Canas*, we reject appellant's argument and overrule his second issue.

### Consideration of Good Conduct Time

In his third issue, appellant argues the trial court erroneously instructed the jury, during punishment, on sentence credit for good conduct time. The court's instruction, which tracked article 37.07, section 4(a) of the Texas Code of Criminal Procedure, reads in part as follows: "Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time." *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (West Supp. 2013). Appellant does not dispute that this instruction tracked the appropriate statutory language, but that he was prejudiced and egregiously harmed by it because he is ineligible to receive good conduct time. The State agrees appellant is ineligible for good conduct time credit, but argues the charge was proper or, alternatively, did not cause egregious harm.

The Texas Court of Criminal Appeals rejected appellant's argument in *Luquis v. State*, 72 S.W.3d 355 (Tex. Crim. App. 2002). In that case, the court acknowledged that the instruction dictated by the code of criminal procedure may appear to be misleading and inapplicable to some defendants. *Id*. at 363. Nonetheless, it construed article 37.07, section (4) to be an absolute command that the good conduct time instruction be given to the jury. *Id*. We have similarly overruled this same argument based on *Luquis*. *See Coppola v. State*, No. 05-10-00704-CR,

2012 WL 29318, at *5 (Tex. App.—Dallas Jan. 6, 2012, no pet.) (not designated for publication); *Gates v. State*, No. 05-11-00404-CR, 2012 WL 753647, at *1 (Tex. App.—Dallas Mar. 9, 2012, pet. ref'd) (mem. op., not designated for publication). Accordingly, a trial court that gives the instruction does not commit error. We overrule appellant's third point.

### Reformation of Judgment to Accurately Reflect Findings

The State raises a counter-point and asks this Court to reform the judgment to correctly reflect a deadly weapon finding by the jury and a finding of true as to the enhancement paragraph.

We may reform a judgment to correctly reflect the jury's findings. *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). Thus, we reform the judgment to show that the jury made a deadly weapon finding and that the jury found the enhancement paragraph to be true.

### Conclusion

As reformed, we affirm the trial court's judgment.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

130253F.U05

–7–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

FREDERICK ANDERSON, Appellant

No. 05-13-00253-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 291st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F12-00400.
Opinion delivered by Justice O'Neill.
Justices Myers and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **REFORMED** to reflect a deadly weapon finding and a finding of true to the enhancement paragraph.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 31st day of December, 2013.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE