ACCEPTED
06-15-00054-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
7/24/2015 1:57:54 PM
DEBBIE AUTREY
CLERK

## NO. 06-15-00054-CR

\* \* \* \* \* \* \* \* \* \* \* \* \*

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
7/24/2015 1:57:54 PM
DEBBIE AUTREY
Clerk

IN THE COURT OF APPEALS

SIXTH  APPELLATE DISTRICT OF TEXAS

TEXARKANA, TEXAS


\* \* \* \* \* \* \* \* \* \*


TASARIRISHE ALEX,
                    Appellant

VS.

THE STATE OF TEXAS,
                    Appellee

\* \* \* \* \* \* \* \* \* \*



Appealed from the 124th  District Court
Gregg County, Texas
Trial Court No. 43,827-B

_____

### BRIEF OF APPELLANT
_____


EBB B. MOBLEY
State Bar # 14238000
Attorney at Law
422 North Center St.-Lower Level
P. O. Box 2309
Longview, TX   75606
Telephone: (903) 757-3331
Facsimile: (903) 753-8289
ebbmob@aol.com

ATTORNEY FOR APPELLANT

TASARIRISHE ALEX,
                  Appellant

VS.

THE STATE OF TEXAS,
                  Appellee

_____

**IDENTITY OF PARTIES AND COUNSEL**
Pursuant to T.R.A.P. 38.1(a)
_____


| | | |
|---|---|---|
| Appellant: | TASARIRISHE ALEX<br>Inmate # 1991992 | Woodman State Jail<br>Gatesville, Texas 76528 |
| Appellant's<br>trial counsel: | JEFF JACKSON<br>Attorney at Law | 736-A Highway 259 North<br>Kilgore, Texas 75662 |
| State's trial<br>counsel: | SHANDA PARKER<br>CHRISTOPHER BOTTO<br>Assistant District Attorneys | 101 East Methvin, Suite 333<br>Longview, Texas 75601 |
| Trial Judge: | ALFONSO CHARLES<br>Presiding Judge | 101 East Methvin, Suite 447<br>Longview, Texas 75601 |
| Appellant's<br>counsel on appeal: | EBB B. MOBLEY<br>Attorney at law | P. O. Box 2309<br>Longview, TX   75606 |
| State's counsel<br>on appeal: | ZAN BROWN<br>Assistant District Attorney | 101 East Methvin, Suite 333<br>Longview, Texas 75601 |

# **TABLE OF CONTENTS**

Page

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5-10

ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

Is there sufficient evidence to prove lack of effective consent by the named owner to entry to the building, an essential element of the charged offense of burglary of a building?

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-15

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# INDEX OF AUTHORITIES

**Cases**

*Bell v. State,* 326 S.W.3d 716, 720 (Tex.App. - Dallas 2010, pet. dism'd) . . . . . . . . 12

*Brooks v. State,* 323 S.W.3d 893, 912 (Tex.Crim.App. 2010) . . . . . . . . . . . . . . . .11,12

*Byrd v. State,* 336 S.W.3d 242, 251 n. 48 (Tex.Crim.App. 2011) . . . . . . . . . . . . . . 12

*Easley v. State,* 319 S.W.2d 325 (Tex.Crim.App. 1959) . . . . . . . . . . . . . . . . . . . . . ..15

*Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App. 2007) . . . . . . . . . . . . . . . . . . . . .12

*Jackson v. Virginia,* 443 U.S. 307, 319 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . .11,12

*Lowery v. State,* No. 06-14-00172-CR slip. op. July 14, 2015 . . . . . . . . . . . . . . . . .15

*Roberts v. State,* 513 S.W.2d 870 (Tex.Crim.App. 1974) . . . . . . . . . . . . . . . . . . . . . 15

*Taylor v. State,* 508 S.W.2d 393, 397 (Tex.Crim.App. 1974) . . . . . . . . . . . . . . . . . .15

## STATEMENT OF THE CASE

This is an appeal from a conviction for burglary of a building. A jury found the appellant guilty and assessed her punishment at confinement for two years in a state jail.

## ISSUE PRESENTED

Is there sufficient evidence to prove lack of effective consent by the owner to entry to the building, an essential element of the charged offense of burglary of a building.

# STATEMENT OF FACTS

The State called seven witnesses in its case in chief.

Angela Valencia

Angela Valencia testified that she was the night manager at Jack in the Box in Kilgore on 259. 3 RR 19-20. She said that the night of the burglary she was working the 5:00 pm to 12:00 am shift. 3 RR 21. She testified that she locked the drive through window when she shut down the store that night. 3 RR 27. She stated that the store safe was kept in the office behind the door. 3 RR 28. She said that she closed and locked both of the two safes on March 9th. 3 RR 29. Ms. Valencia said that she did not locked the office door that night because the door only locked from the inside and she did not have a key and she knew that the safes were locked. 3 RR 34. Ms. Valencia testified while watching the surveillance video that she turned the store lights off at 1:16. 3 RR 39. While still watching the video she stated that the time read 1:30 when a woman was climbing through the window. 3 RR 41. She said that the woman went out the back door. 3 RR 42. She went on to describe the vehicle leaving as a white SUV. Ms. Valencia testified that when she left the store that night, no one was there. 3 RR 43.

Officer James McDowell

Officer McDowell testified the he was a certified peace officer with the Kilgore Police Department. 3 RR 53. He stated that he was working as a patrol officer the morning of March 9, 2014. 3 RR 54. He was dispatched to Jack in the Box in response to a call regarding a possible burglary. He testified that they located a pair

of newer white gloves just inside the entry as well as a rock or cement that appeared to have been used to break the window. Officer McDowell said that when he went into the manager's office the safe was open and the money trays were on the ground. 3 RR 57. He stated that three black money trays were on the floor to the left of the safe and one was still in the safe with the safe being open. 3 RR 58. Officer McDowell testified that he reviewed the security video with manager Francheska Ward. He said that the first thing he noticed was that the camera's timestamps weren't concurrent with the actual time. 3 RR 68. He said that on the video around 1:30 a.m. an object comes through the rear window where the drive-through is and he could see glass shattering. He said that he then saw a person climbing in through the window. He described the person as a stocky figure in all black clothing, wrapped from head to toe. He said he observed white gloves on the person's hands and what appeared to be a white towel wrapped around the front of the person's head. He said that the person proceeded towards the back room area to where the manager's office was located. Officer McDowell stated that you could see a large matter of hair, black hair, sticking out the back. 3 RR 69. He said that the video showed a flicker of light as the office door opened and closed but it never came on. He said that the video showed the person in the office for two to three minutes then the office door opened and shut again and the person exited through the back door. 3 RR 70.

Francheska Ward

Francheska Ward testified that she was the general manager at Jack in the Box. 3 RR 94. She stated that she was called into the store around 5:45 in the morning on March 9, 2014 and told that the store had been broken into. She testified that when she arrived at the store, the two openers were there. The police officers had not

arrived yet. She said that the glass was broken and the safe was open. She stated that the change was kind of scattered everywhere through the safe. 3 RR 95. Ms. Ward stated that Latoya Timmons and Juana Chavez were the store openers. Ms. Ward said that she called the police at that time and helped them with gathering evidence when they arrived. She testified that she helped them get the video together. 3 RR 96. She stated that the money out of the safe was missing. She estimated that it was $700-$800. Ms. Ward stated that she watched the video surveillance and the camera by the back door showed the glass breaking and a person entering through the window. She said that the light was off in the office but you could see someone with maybe a cell phone light putting the code into the safe. 3 RR 97. She said that the parking lot camera showed the vehicle leaving the parking lot. 3 RR 98. Ms. Ward testified that she gave the video from the back door camera and parking lot camera to the police officers, but by the time they requested the video from the office camera, it had already automatically deleted. 3 RR 99. Ms. Ward stated she believed the person in the video could be Chaka, a team leader who was let go a month or month and a half before the incident. 3 RR 100. Chaka is Tasarirshe Alex. 3 RR 101. Ms. Ward stated that she recognized Ms. Alex's jacket, body style and hair in the video. She said that Ms. Alex had an Afro type of ponytail at the time and frequently wore a gray zipper type hoodie like the person in the video. 3 RR 102. Ms. Ward said that she hired Ms. Alex in 2013 and worked with her for about a year. She said that she personally worked with Ms. Alex at least three times a week during that year. 3 RR 103. Ms. Ward testified that Ms. Alex drove a white Envoy and that she was fired about a month to a month and a half before the incident. 3 RR 104. Ms. Ward stated that she did not know how to change the safe code at the time and therefore did not change it after Ms. Alex was fired. 3 RR 105. She stated at the time about six people had the code to the safe –

Latoya Timmons, Valerie Sanchez, Angela Valencia, herself and Ms. Alex. She said that herself, Angela, Valerie and Latoya were still employed at Jack in the Box at the time of the incident. According to Ms. Ward, the store had an alarm, but it had been broken for about a year. She said that there was a lock on the office door. 3 RR 106. She added that they did not lock the door because they did not have a key and it only locked from the inside. Ms. Ward said that to lock the safe you have to push it really hard and then kind of turn it and that it just locks. To open it you have to enter a code on a push pad. 3 RR 107. While watching the surveillance video, Ms. Ward identified the vehicle in the parking lot as Ms. Alex's Envoy. 3 RR 108. She said that she did not see the perpetrator get into the vehicle and only saw the side view of the vehicle. She also said that she could not say with certainty that the perpetrator got out of that vehicle. She did not see the license plate. 3 RR 130.

Cecilia Sanchez

Ms. Sanchez testified that she worked at Jack in the Box for two years, her last day being January 30, 2015. She stated that she was a crew member and was familiar with Ms. Alex. She said that she worked with Ms. Alex for five or six months, about two or three days a week. 3 RR 135. Ms. Sanchez testified that when she arrived at work the morning of the break in she saw a lot of glass on the floor and went to the office where her manager was watching the surveillance video. She said that she watched a little bit of the video at that time, but not the whole thing. 3 RR 136. She stated that it was hard to recognize the person in the video because it was hard to see the face. She said the head was covered with some sort of cloth and she could only see from the nose down and a silhouette of the body. She stated that it kind of looked like Ms. Alex's body shape. 3 RR 137.

Maria Juana Chavez

Ms. Chavez testified that she worked in the kitchen at Jack in the Box and was working on the morning of March 9, 2014. 3 RR 152. She stated that she arrived at work the morning of the 9th at 5:30 a.m. She said that she and LaToya arrived at the restaurant to open at the same time. They walked in and saw that the window was broken in the back. She said they went right back outside. 3 RR 152. Ms. Chavez said that LaToya called the police. They wanted outside until the police arrived. She went on to testify that Ms. Ward showed her the surveillance video. Ms. Chavez said that the person in the video looked like a woman. 3 RR 153. Ms. Chavez testified that she worked with Ms. Alex two to three times per week but that she was not familiar with Ms. Alex. 3 RR 154.

Luciana Alvarez

Luciana Alvarez testified that she started working at the Jack in the Box in Kilgore in 2011. 3 RR 156. She worked there up until the end of 2014. She stated that she worked with Ms. Alex for about six or seven months but not usually on the same shift. 3 RR 157. She said that sometimes their shifts would overlap a few hours. Ms. Alvarez testified that she thought Ms. Alex's husband usually brought her to work in a white van. 3 RR 158. She testified that she watched the surveillance video with Francheska Ward and Cecilia Sanchez. 3 RR 159. She said that when she watched the video she believed the person was Ms. Alex. Ms. Alvarez said that she knew Ms. Alex's shape and way of walking and that made her believe it was Ms. Alex. She testified that she was 70% sure the person in the video was Ms. Alex. Ms. Alvarez testified that she also saw a white van moving away on the video. 3 RR 160. She did not recognize the vehicle. 3 RR 161.

Detective Charles "Tim" Dukes

Detective Dukes testified that he was a detective for the Kilgore Police Department. 3 RR 163. The Jack in the Box burglary case was assigned to him. 3 RR 165. He testified that the officers advised him that they collected a pair of gloves at the scene and that they had viewed a video that at the time was not available to be downloaded. He said that he spoke with Francheska Ward and asked her to have the video downloaded. Detective Dukes testified that he also spoke with the general manager on the 10th. 3 RR 166. Detective Dukes stated that they did not test for DNA. He said the gloves were collected but they were not tested. He stated that it was his understanding that another office dusted for prints but that the person in the video was wearing gloves so he did not think any fingerprints were collected. 3 RR 167. Detective Dukes testified that three of the employees he spoke with who watched the surveillance video identified that person in the video as Ms. Alex and that is how he developed his suspect. He said that the vehicle in the video also matches Ms. Alex's vehicle. 3 RR 170. He said from the video it was obvious that the person was only inside the store for a short period of time and went directly to the safe. 3 RR 172. He stated that he drove to Ms. Alex's residence and located the vehicle and ran the license plate. 3 RR 173.

The State then rested. The defense then rested without calling witnesses. 3 RR 209-210.

Both sides presented final arguments on March 25, 2015. The jury found the defendant guilty as charged in the indictment. 4 RR 46. After brief testimony by the defendant, 4 RR 8, and closing statements by both sides, the jury assessed punishment at 2 years confinement in state jail. 4 RR 10. CR-44.

## ISSUE

Is there sufficient evidence to prove lack of effective consent by the named owner to entry to the building, an essential element of the charged offense of burlary of a building?

## SUMMARY OF THE ARGUMENT

There is no evidence that the named owner, Curtis Franklin, did not consent to an unlawful entry into a building.

## ARGUMENT  AND AUTHORITIES

The indictment in this case, at CR-4,  provides in pertinent part that in Gregg County, Texas:

> on or about the 9[th] day of March, 2014, . . . TASARIRISHE TACHAKA ALEX, hereinafter called Defendant, did then and there, with intent to commit theft, enter a building or a portion of a building not then open to the public, without the effective consent of Curtis Franklin, the owner thereof;

The jury was charged that "**Owner**" means a person who has title to the property, possession of the property, whether lawful or not, or greater right to possession of the property than the actor.   CR-35

## STANDARD OF REVIEW

In reviewing the legal sufficiency of the evidence,  all the evidence is reviewed in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State,* 323 S.W.3d 893, 912 (Tex.Crim.App. 2010) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)); *Bell v. State,* 326 S.W.3d 716, 720 (Tex.App. - Dallas 2010,

pet. dism'd) (citing *Brooks,* 323 S.W.3d at 898). Legal sufficiency is tested under the direction of the *Brooks* opinion, while giving deference to the responsibility of the trier of fact "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App. 2007) (citing *Jackson,* 443 U.S. at 318-19). "We defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony because the jury is the sole judge of those matters." *Bell,* 326 S.W.3d at 720 (citing *Brooks,* 323 S.W.3d at 899).

## ANALYSIS

The State was required to allege the name of the owner of the stolen property in its indictment against Lowrey. See *Byrd v. State,* 336 S.W.3d 242, 251 n. 48 (Tex.Crim.App. 2011). "When an entity, such as a corporation, owns property, the tranditionally preferable practice has been to allege ownership in a natural person acting for the corporation." *Id.* at 252. "Although, the *name* of the owner is not a substantial element of theft, the State is required to prove, beyond a reasonable doubt, that the person (or entity) alleged in the indictment as the owner is the *same* person (or entity) - regardless of the name - as shown by the evidence."

State's witness Francheska Ward, the general manager of Jack in the Box, is the only witness that spoke of Curtis Franklin, at 3 RR 94-95:

Q.  And who is Curtis Franklin?

A.  He's my district manager.

Q.  And what does he do?

A. He comes in and just, you know, kind of makes sure I'm doing what I'm supposed to be doing.

Q. But you're the person that's actually over this . . . .

A. Yes, . .

Q. . . store?

A. . . . I'm over that store. Yeah.

Ms. Ward later testified as follows at 3 RR 114-115:

Q. Did your district manager, Curtis Franklin, see the video as well?

A. Yes, he did.

Q. And do you have authority to speak for Mr. Curtis Franklin in this matter?

A. Yes.

Q. And why is that?

A. Because he told me. What do you mean, "Why is that?"

Q. Do you normally act on behalf of the store or the . . .

A. Oh, yes.

Q. When the store is closed and locked, as you saw Ms. Valencia do, does anyone have your permission to be in the store at that time?

A. No.

Q.  Did you give anyone permission to be in the store after that, on that day?

A.  No.

Q.  After an employee is fired, do they have your permission to be in the back area of the store?

A.  No.

Q.  Are you aware if Mr. Franklin gave the defendant permission to be in that building . . .

Mr. Jackson:   Object, Your Honor, . . .

Q.  (By Ms. Parker) . . . on that day?

Mr. Jackson:   that calls for hearsay.

The Court:  As to the specific question asked, I'll overrule that objection. That does not call for hearsay. The objection is overruled.

Q.  (By Ms. Parker)  I'll ask you again. Are you aware if Mr. Franklin gave the defendant permission to be in the store on that day?

A.  No.

Q.  Okay. Thank you.

This court has recently considered sufficiency of evidence in an owner identity challenge in *Lowery v. State,* No. 06-14-00172-CR slip. op. July 14, 2015. Two cases were analyzed:  *Easley v. State,* 319 S.W.2d 325 (Tex.Crim.App. 1959) *and  Roberts v. State,* 513 S.W.2d 870 (Tex.Crim.App. 1974) .

In *Easley,* theft was alleged from H.E. Butt.  Trial proof showed that the owner of the stolen property was H.E. Butt Grocery Co., and not H.E. Butt individually.  Easley's conviction was reversed.

In *Roberts,* the owner of the stolen property(chains) was alleged to be an individual, Jack Dahlston.  The court found that the State failed to prove its allegations because it never proved that Dahlston, who did not testify, was neither the actual owner or the "special owner" of the chains.  *Roberts* at 872.

Both *Easley* and *Roberts* involve ownership alleged in an individual. In the case at bar the identity and authority of Curtis Franklin is opaque at best. Ward's testimony establishes that she was not aware if Franklin gave the defendant permission to be in the store on that day.  3 RR 115.

The State will no doubt argue that Franklin's "failure to consent" is a reasonable deduction that a jury could make from the evidence.  And it is clear that lack of effective consent can be established by circumstantial evidence.  See *Taylor v. State,* 508 S.W.2d 393, 397 (Tex.Crim.App. 1974).   But there is simply no evidence at all as to what Franklin did or said about that "consent" to anyone.

## PRAYER

This case should be reversed and remanded for a new trial.


Respectfully submitted,


EBB B. MOBLEY
Attorney at Law
422 North Center St - Lower Level.
P. O. Box 2309
Longview, TX   75606
Telephone: (903) 757-3331
Facsimile: (903) 753-8289
ebbmob@aol.com


 /S/ EBB B. MOBLEY
**EBB B. MOBLEY**
State Bar # 14238000
ATTORNEY FOR APPELLANT

## CERTIFICATE OF COMPLIANCE

I certify that this pleading contains 3383  words according to the computer program used to prepare the document.


/s/   EBB B. MOBLEY
**EBB B. MOBLEY**


## CERTIFICATE OF SERVICE

A copy of this brief emailed to Gregg County Assistant District Attorney Zan Brown on the 24th day of July, 2015 by efile.


 /s/   EBB B. MOBLEY
**EBB B. MOBLEY**