Oral Argument Requested
Appointment of Counsel Requested

NO. PD-1370-15

_____

# IN THE
# TEXAS COURT OF CRIMINAL APPEALS

_____

ROBERT TRACY WARTERFIELD,
*Appellant-Petitioner,*

v.

THE STATE OF TEXAS
*Appellee-Respondent*

_____

**From the Fifth Court of Appeals,
Cause No. 05-12-00646-CR**

**Appeal from the 7th Criminal District Court of
Dallas County, Texas, Cause No. F10-61655-Y
Hon. Michael Snipes Presiding**

_____

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

_____

ROBERT TRACY WARTERFIELD
PRO SE

William P. Clements Unit
# 1829999
9601 Spur 591
Amarillo, Texas 79107-9696

RECEIVED IN
COURT OF CRIMINAL APPEALS

November 20, 2015

ABEL ACOSTA, CLERK

# GROUNDS FOR REVIEW

I.      Whether the Fifth Court of Appeals misconstrued the provisions of the April 18, 1994 plea agreement contract in cause no. 93-43772, thereby undermining a correct determination of the performances that the State is Constitutionally (U.S. & Tex.) required to make towards this Appellant

II.      Whether the Fifth Court of Appeals erred in its determination that the trial court did not abuse its discretion in allowing the State to reopen its case-in-chief and recall witnesses

III.      Whether the Fifth Court of Appeals erred in its determination based on the sufficiency of the evidence. The court did not properly consider the totality of the evidence, or the record, and this error is compounded by Ground Two

IV.      Whether the Fifth Court of Appeals erred in not reversing the conviction due to the trial court's failure to *sua sponte* instruct the jury in accordance with Tex. Code Crim. P. art. 38.23 after fact issue regarding the legality or constitutionality of obtained evidence had entered the record

V.      This conviction should be reversed due to violations of the Ex Post Facto Clauses, and it was error by the Fifth Court of Appeals not to do so

# TABLE OF CONTENTS

Grounds for Review ......................................................................... 2

Table of Authorities ....................................................................... 5

Identity of Parties and Counsel ..................................................... 8

Statement Regarding Oral Argument ......................................... 10

Statement Regarding Appointment of Counsel .......................... 11

Statement of the Case and Procedural History ......................... 12

Argument ....................................................................................... 14

   I.   Ground One - The district court erred in denying Flores's request to amend his federal habeas petition in light of this Court's decisions in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S.Ct. 1911 (2013). ....................................................... 14

      a.  Interpretive Canons ............................................................. 17
      b.  Applications of Canons of Plea Agreement Construction to This Case ................................................................................ 25

  II.  Ground Two - The Court of Appeals erred in its ruling that the trial court did not abuse its discretion in recalling witnesses Fitzwater and Ramirez.  I did not and do not waive this error because of a failure to brief.  The appellate attorney in this case, Erin B. Healy, was ineffective in her representation on numerous fronts, and this is just another example.  When briefed proper-ly and fully considered, this claim would entitle me to relief from the conviction. ....................................................................................... 31

  III. Ground Three - The State failed to prove beyond a reasonable doubt what the applicable statute of limitations was, and that this prose-cution was properly within that limitation. ......................... 35

  IV.  Ground Four - The court of appeals erred in not reversing this conviction due to the trial court's failure to *sua sponte* give proper

jury instructions in accordance with Tex. Code Crim. P. 38.23 after fact issues of legality or constitutionality of obtained evidence had entered the record. Alternately, trial counsel was ineffective for not requesting the 38.23 instruction ........................................35

V. Ground Five - The court of appeals failed to identify Ex Post Facto Clause violations and remedy those errors. ...................................36

Conclusion .................................................................................................39

Prayer ........................................................................................................41

Exhibit A....................................................................................................42

Exhibit B....................................................................................................43

# TABLE OF AUTHORITIES

**Cases**

*All American Siding & Windows, Inc. v. Bank of America Nat. Ass'n*, 367 S.W.3d 490 (Tex. App.—Texarkana 2012) ..................................... 25

*Brady v. United States*, 397 U.S. 742 (1970) .......................................... 23

*Bynum v. State*, 767 S.W. 2d 769 (Tex. Crim. App. 1987) ..................... 15

*Calder v. Bull*, 3 U.S. 386 (1798) ......................................................... 37

*Carmell v. Texas*, 529 U.S. 513 (2000) ................................................. 37

*City of Houston v. Williams*, 353 S.W.3d 128 (Tex. 2011) ..................... 21

*Contreras v. State*, 658 S.W.2d 334 (Tex. App.—Austin) ...................... 17

*Correale v. U.S.*, 479 F.2d 944 (1st Cir. 1973) ..................................... 24

*Doyle v. State*, 24 S.W.3d 598 (Tex. App.—Corpus Christi 2000) .......... 33

*Ex parte Matthews*, 933 S.W.2d 134 (Tex. Crim. App. 1996) ................ 27

*Ex Parte Moussazadeh*, 361 S.W.3d 684 (Tex. Crim. App. 2012) ........... 27

*Fix v. Flagater Bank, FSB*, 242 S.W.3d 147 (Tex. App.—Fort Worth 2007) ......................................................................................... 21

*Gutierrez v. State*, 108 S.W.3d 304, (Tex.Crim. App. 2003) ................... 15

*Hartman v. Urban*, 946 S.W.2d 546 (Tex. App.—Corpus Christi 1997) 22

*Hicks v. Humble Oil & Refining Co.*, 970 S.W.2d 90 (Tex. App.— Houston [14th Dist.] 1998). ................................................................. 38

*Howlett v. State*, 946 S.W.2d 870 (Tex. App.—Eastland 1997) .............. 35

*In re Rubio*, 55 S.W.3d 238 (Tex. App.—Corpus Christi 2001) .............. 15

*Jordan v. State*, 56 S.W.3d 326 (Tex. App.—Houston [1st Dist.] 2001).. 38

*Langever v. Miller*, 76 S.W.2d 1025 (Tex. 1934) ................................... 22

*Lemell v. State*, 915 S.W.2d 486 (Tex. Crim. App. 1995) ...................... 35

*Lopez v. State*, 708 S.W. 2d 446 (Tex. Crim. App. 1986) ...................... 16

*Luling Oil & Gas Co. v. Humble Oil & Refining Co.*, 191 S.W.2d 716 (Tex. 1945) ..................................................................................... 23

*Mabry v. Johnson*, 467 U.S. 504 (1984) ........................................... 15, 18

*Mendez v. U.S.*, 537 U.S. 1060 (2002) .................................................. 19

*Peek v. State*, 106 S.W.3d 72 (Tex. Crim. App. 2003) ........................... 33

*Pineda Contreras v. U.S.*, 537 U.S. 1094 (2002) ................................... 19

*Proctor v. Cockrell*, 283 F.3d 726 (7th Cir. 2002)......................................38

*Proctor v. State*, 967 S.W.2d 840 (Tex. Crim. App. 1998).......................35

*Rivera v. Countrywide Home Loans, Inc.*, 262 S.W.3d 834 (Tex. App.—
    Dallas 2008).................................................................................................21

*Saldano v. State*, 70 S.W. 3d 873 (Tex. Crim. App. 2002)......................16

*Santobello v. New York*, 404 U.S. 257(1979) ................................... 15, 23

*Scott v. State*, 597 S.W.2d 755 (Tex. Crim. App. 1979) ..........................33

*Solis v. Evans*, 951 S.W.2d 44 (Tex. App.—Corpus Christi 1997). ........23

*Stogner v. California*, 123 S.Ct. 2446 (2003) ..........................................37

*U.S. v. Borders*, 992 F.2d 563 (5th Cir. 1993)...........................................17

*U.S. v. Bowler*, 585 F.2d 851 (7th Cir. 1978) ...........................................24

*U.S. v. Brown*, 328 F.3d 787 (5th Cir. 2003) ............................................18

*U.S. v. Carter*, 454 F.2d 426 (4th Cir. 1972) ............................................40

*U.S. v. De la Fuente*, 8 F.3d 1333 (9th Cir. 1993) ...................................24

*U.S. v. Elashyi*, 554 F.3d 480 (5th Cir. 2008) ................................... 17, 20

*U.S. v. Giorgi*, 840 F.2d 1022 (1st Cir. 1988)...........................................24

U.S. v. Gonzalez, 309 F.3d 882 (5th Cir. 2002)..........................................18

*U.S. v. Lewis*, 476 F.3d 369, 387 (5th Cir. 2007), cert. denied 127 S. Ct.
    2893 (2007) ................................................................................................14

*U.S. v. Munoz*, 408 F. 3d 222 (5th Cir. 2005) ................................... 16, 25

*U.S. v. Reed*, 778 F.2d 1437 (9th Cir. 1985)..............................................20

*U.S. v. Solis*, 299 F.3d 420 (5th Cir. 2002)................................................18

*U.S. v. Somner*, 127 F.3d 405 (5th Cir. 1997) ..........................................20

*U.S. v. Thomas*, 593 F.2d 615 (5th Cir. 1979)..........................................17

*U.S. v. Valencia*, 985 F.2d 563 (5th Cir. 1993) ........................................17

*Warterfield v. State*, 05-13-00017-CR, 2014 WL 4217837 (Tex. App —
    Dallas Aug. 27, 2014). ..............................................................................28

*Weingarten Realty Investors v. Albertson's, Inc.*, 66 F. Supp. 2d 825,
    aff'd 234 F.3d 28 (S.D. Tex. 1999) ..........................................................21

*Westbrook v. State*, 29 S.W.3d 103 (Tex. Crim. App. 2000), cert. denied,
    *Westbrook v. Texas*, 532 U.S. 944 (2001) ..............................................36

**Statutes**

Tex. Bus. & C. Code §1.201 ................................................................. 25

Tex. Code Crim. P. Art. 18.01 ............................................................ 29

Tex. Code Crim. P. Art. 36.02 ....................................................... 32, 33

Tex. Code Crim. P. Art. 38.43 ............................................................ 30

**Rules**

Tex. R. App. P. 66.3 ........................................................................ 10

**Constitutional Provisions**

TEX. CONST. Art. 1, § 16 .............................................................. 22, 26

TEX. CONST. Art. 1, §§ 13 & 19) .................................................. 26, 37

U.S. CONST. Art. 1, § 10, cl. 1 ........................................................ 26

U.S. CONST. Fourteenth Amendment ............................................ 26, 37

## IDENTITY OF PARTIES AND COUNSEL

For Appellant Robert Tracy Warterfield:

    William Schultz
      Trial Counsel
      2101 Bruggs Court
      Plano, TX 75025

    Kimberly Meyer
      Trial Counsel
      (Address Unknown)

    Erin B. Healy
      Direct Appeal Counsel
      P.O. Box 1407
      Van, TX 75790

    Robert Tracy Warterfield
      Petition for Discretionary Review, pro se
      William P. Clements Unit
      # 1829999
      9601 Spur 591
      Amarillo, TX 79107-9606


For Appellee the State of Texas:

    Carmen White
    Russell Wilson
    Craig Watkins
      Trial Counsel
      Dallas County District Attorney's Office
      133 N. Riverfront Blvd.
      Dallas, TX 75207

    Jaclyn O'Connor Lambert
      Appellate Counsel (?)
      Frank Crowley Courts Building

133 N. Riverfront Blvd.
Dallas, TX 75207
214-653-3625

## STATEMENT REGARDING ORAL ARGUMENT

The Dallas Court of Appeals, whose errors go to the very foundation of our criminal justice system, undermines the rule of law. The court of appeals in this case has ignore this Court's and the Supreme Court of the United States's precedent and instruction in the proper construction of plea agreement contracts. See Tex. R. App. P. 66.3(b) (should laws in existence at formation be fixed provisions); (c) (cannot impair the U.S. and Tex. Constitutions' Contract Clauses); (d) (courts below have misapplied constitutionally mandated canons of plea agreement construction); (f) (the court of appeals has departed to such a degree that this Court's supervisory role needs to be employed). I believe that oral arguments would be helpful for this Court to recognize the implications to the rule of law and to correct the errors.

## STATEMENT REGARDING APPOINTMENT OF COUNSEL

In the event that this petition is granted and in the interests of justice, an attorney should be appointed to aid me in this complex litigation. I would likely be unable to attend oral arguments, logistically speaking, though I would if I could. The fact this this is a case of first impression in the realm of criminal jurisprudence, involves the foundational process of plea agreements, and deal with complex issues like ex post fact and contract law, as well as for the public interests, such an unusual request should be granted to facilitate justice.

## STATEMENT OF THE CASE AND PROCEDURAL HISTORY

In 1989, the seven-year old complainant was sexually assaulted. Police collected evidence from the scene including a pillowcase stained with semen from an unknown person, but not the appellant's, a black ski mask with red hairs (the appellant's are "smooth blond"), cups in which the victim spit, a shoe print the size of which was never revealed, and a black t-shirt with no chain of custody. Allegedly, cuttings from the black t-shirt were made soon after at SWIFS. These were not tested until 2010, some 21 years later, though the appellant was a suspect as early as 1992 when his apartment was searched (during which a black t-shirt was confiscated) and soon after a warrant was executed. Apparently, the only evidence left was the t-shirt cutting. Forensic tests revealed a mixture of DNA from the appellant and the victim on the cutting. The appellant was tried before a jury in the Seventh Criminal District Court of Dallas County, convicted, and sentenced to life, no fine. A direct appeal was made by allegedly ineffective appellate counsel, and the conviction was affirmed by the Fifth Court of Appeals at Dallas. Appellant, through no fault of his own, was barred from making a petition for discretionary review due to ineffective assistance of appellate counsel. He then sought

12

and received permission to file an out-of-time petition for discretionary review, which he now respectfully submits.

## ARGUMENT

## I. GROUND ONE

**The Court of Appeals erred in its construction of Appellant's 1994 plea agreement, which, correctly interpreted, would have barred the prosecution entirely or otherwise warranted suppression of the 1992 anchor warrant and its fruits so as to make prosecution highly unlikely to be successful for the State**.

The Fifth Court of Appeals has erred by not properly construing the April 18, 1994 plea agreement in case no. 893-43772. This error has made it impossible for that court to correctly evaluate the trial court's error in the interpretation and enforcement of the plea agreement contract. As a consequence, the State has been allowed to misinterpret the contract's true provisions to its advantage and avoid the performances that it is obliged to make towards this Appellant. The Court of Appeals had an affirmative duty to "review a claim of breach de novo, accepting the district court's factual findings unless clearly erroneous." *U.S. v. Lewis*, 476 F.3d 369, 387 (5th Cir. 2007), cert. denied 127 S. Ct. 2893, 167, L.Ed. 2d 1164 (2007). The appeals court must "apply general principles of contract law to interpret the terms of a plea agreement." *Lewis*, 476 F.3d at 387. Upholding the integrity of plea agreements is absolutely essential. "This

phase of the criminal justice, and its adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise of agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Gutierrez v. State*, 108 S.W.3d 304, 305-06 (Tex.Crim. App. 2003) (quoting *Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L.Ed. 2d 427 (1971). The State's breaches, as described below, implicate the constitutional guarantee of due process. *See Mabry v. Johnson*, 467 U.S. 504, 509-00, 104 S. Ct. 2543, 2547-48, 81 L.Ed.2d 437 (1984) and *Santobello*, 404 U.S. 257. Furthermore, plea bargains allow "the parties to choose predictability over unpredictability." *Gutierrez,* 108 S.W.3d at 306, quoting *In re Rubio*, 55 S.W.3d 238, 242 (Tex. App.—Corpus Christi 2001).

As a general rule, the Court of Criminal Appeals will not review a claim in the petition that was not originally presented to the court of appeals. *Bynum v. State*, 767 S.W. 2d 769, 777-78 (Tex. Crim. App. 1987). However, the Court of Criminal Appeals may review fundamental error

that is raised for the first time in the petition for review. *Lopez v. State*, 708 S.W. 2d 446, 449 (Tex. Crim. App. 1986). Appellant has contended with his attorneys over the presentment of some of the following issues, and in fact now choses representation *pro se* over representation of attorney just so that his claims of contractual breach and ex post facto violations are fairly presented to this State's highest criminal court. Appellant herein argues that the right to have the terms of a plea agreement with the State fulfilled by the State is a right that must be implemented unless expressly waived, and thus failure to object to the trial court does not preclude the appeals court or this Honorable Court from addressing the following claims of the State breaching the 1994 plea agreement.

"The Government's failure to fulfill its promise affects the fairness, integrity and public reputation of judicial proceedings. And thus, a breach of a plea agreement can constitute plain error." *U.S. v. Munoz*, 408 F. 3d 222, 226 (5th Cir. 2005). "There are three categories of fundamental error: (1) errors recognized by the legislature as fundamental; (2) the violation of rights which are waivable only; and (3) the denial of absolute, systematic requirements." *Saldano v. State*, 70 S.W. 3d 873, 887-88 (Tex. Crim. App. 2002). A breach of plea agreement is fundamental

error, and any prosecution initiated and sustained through the State's breach of a plea agreement should be considered structural error.

**Interpretive Canons**

When construing the provisions of a plea agreement, a court should properly employ the following canons of construction. The trial court and the court of the appeals have not.

A) A defendant's reasonable understanding of the agreement should be given deference. "In determining the scope of the plea bargain, it is improper to use a subjective standard; the test is, whether the circumstances when view objectively would lead one in the position of defendant to reasonably conclude the bargain was as he interprets it." *Contreras v. State*, 658 S.W.2d 334, 337 (Tex. App.—Austin). *See also U.S. v. Thomas*, 593 F.2d 615 623 (5th Cir. 1979). "When construing a plea agreement, the Court of Appeals looks to what defendant reasonably understood when entering his plea." *U.S. v. Borders*, 992 F.2d 563 (5th Cir. 1993); *see also U.S. v. Valencia*, 985 F.2d 563 (5th Cir. 1993); *U.S. v. Elashyi*, 554 F.3d 480, 501 (5th Cir. 2008). Focusing on and giving deference to a defendant's reasonable understanding reflects the proper constitutional focus

on what induced the defendant to plead guilty. *See generally Mabry v. Johnson,* 467 U.S. 504, 507-11, 104 S. Ct. 2543, 2546-2548, 81 L.Ed.2d 437 (1984).

B)    Once it is established what a defendant's reasonable understanding of what the agreement's provisions are, further inquiry is necessary in order to ensure the contract's provisions as well as what is due the defendant.  Perhaps the best reflection of what is a defendant's reasonable understanding, is by identifying conduct by the State that is consistent with the defendant's reasonable understanding.  This demonstrates the contractual theories of "meeting of the minds" and an expression of the "intent of the parties." Additionally, identifying conduct by the State that is consistent with the defendant's reasonable understanding serves to highlight a breach of the agreement when the State's conduct is subsequently contrary. "To assess whether a plea agreement has been violated, court considers whether government's conduct is consistent with defendant's reasonable understanding of the agreement." *U.S. v. Brown,* 328 F.3d 787 (5th Cir. 2003); *U.S. v. Gonzalez,* 309 F.3d 882 (5th Cir. 2002); *U.S. v. Solis,* 299 F.3d 420 (5th Cir. 2002); *Mendez v. U.S.,* 123 S.Ct. 630,

537 U.S. 1060, 154 L.Ed.2d 543 (2002); *Pineda Contreras v. U.S.*, 123 S.Ct. 705, 537 U.S. 1094, 154 L.Ed.2d 642 (2002).

C)    The parol evidence rule should not be as rigidly applied in construing plea agreement contracts as it is in commercial contracts. Certainly, whether or not a contract is ambiguous needs to be determined as a matter of law as with any other contract. However, even with an unambiguous plea agreement, a strict, four-corners examination (as done by the trial court in this case) that excludes a performance owed to the defendant would be an unacceptable violation of Due Process. A defendant's reasonable understanding of the agreement and conduct by the State consistent therewith are but two examples of parol evidence proper in a plea agreement context, even with an unambiguous contract. The former must examine the context in which the contract is made and the latter looks to the subsequent actions of a party.

D)    Another canon of plea agreement construction designed to ensure proper observance of a defendant's Due Process is *contra proferentem*. It means "against the drafter," and is designed to resolve ambiguity in favor of the party that did not draft the contract. In a plea agreement context, regardless of the drafter, ambiguity is resolved in favor of the defendant.

19

"Thus, a plea agreement is construed strictly against the Government as the drafter." *Elashyi*, 554 F.3d at 501, quoting *U.S. v. Somner*, 127 F.3d 405, 408 (5th Cir. 1997). "Responsible public servant who recognizes the desirability in agreements would avoid use" of vague language in plea agreements. *U.S. v. Reed*, 778 F.2d 1437, 1441 (9th Cir. 1985), 479 U.S. 835, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986).

E)     Another canon of plea agreement construction heretofore not established in criminal jurisprudence (and hence this presents a case of first impression), though accepted widely for commercial contracts, is that the laws in existence at formation are incorporated as express default provisions that govern performances between the parties. Furthermore, such laws become vested substantive rights to which the Contract Clauses of the U.S. and Texas Constitutions prevent the impairment of these contractual rights. In fact, the constitutions as they exist at formation are additionally all incorporated, remain supreme law over incorporated statutory and common law, and themselves are not subject to impairment, even by subsequent constitutional amendment. Succinctly the status of laws at formation define the contract's meaning, and that meaning is not one iota different at any subsequent time. Unilateral, post-hoc

amendment by the State to a contract to which she herself wrote and is a party is repugnant to and violative of the standards of liberty and justice to which the country's courts profess to uphold. "Under Texas law, when making its interpretation of contract, court will view the agreement as of the time it was made, and not in light of subsequent events." *Weingarten Realty Investors v. Albertson's, Inc.*, 66 F. Supp. 2d 825, affirmed 234 F.3d 28 (S.D. Tex. 1999).

"The laws which subsist at the time and place of the making of the contract form a part of it, as if they were expressly referred to or incorporated in its terms." *City of Houston v. Williams*, 2011 WL 923980, 353 S.W.3d 128 (Tex. 2011). "Laws in effect at the time the contract is entered into should govern the fulfillment of the contract." *Rivera v. Countrywide Home Loans, Inc.*, 262 S.W.3d 834 (Tex. App.—Dallas 2008). The doctrine is based on the presumption that the parties to a contract knew and took into consideration the law in effect at the time of the contract, and, thus, courts are reluctant to change the rights and obligations from those originally agreed to by retroactively applying a change in the original law." *Fix v. Flagater Bank, FSB*, 242 S.W.3d 147 (Tex. App.—Fort Worth 2007). "Substantive rights and duties of a party pursuant to

21

agreement are those under laws that existed at time agreement was made, subsequent law that changes those rights and duties would violate Texas Constitution's prohibition against ex post facto laws." TEX. CONST. Art. 1, § 16; *Hartman v. Urban*, 946 S.W.2d 546 (Tex. App.—Corpus Christi 1997). "Constitutional provision prohibiting enactment of laws impairing the obligation of contracts becomes part of each contract protecting it to extent of Contract Clause from impairment even by constitutional amendment." *Langever v. Miller*, 124 Tex. 80, 76 S.W.2d 1025 (Tex. 1934). "The obligation protected is not derived from the acts and stipulations of the parties alone, but also includes the relevant laws in force at the time the contract is made. The Contract Clause prohibits only laws which operate retroactively on contracts." ("Interpretive Commentary" to Article I, § 16, Vernon's Annotated Texas Constitution, Vol. 18, 319.)

The provisions ultimately merged, excluded, or silent but intended by the parties to a contract are thus not only the result of the laws in existence at formation, the relevant laws themselves become provisions that govern subsequent performances between the parties. Any silence, lack of reference, or absence of a waiver or disclaimer in the written instrument to a written law or constitutional provision is merely *agreement*

22

to that law being incorporated into the contract. "Where agreement is silent or obscure as to a particular subject, the law and usage become a part of contract [and] constitute a supplement to and interpret it. *Luling Oil & Gas Co. v. Humble Oil & Refining Co.*, 191 S.W.2d 716, 144 Tex. 475 (Tex. 1945).

F)    A plea agreement must be entered into knowingly, voluntarily, and intelligently, with a full understanding of the value of any commitments and rights under the standard of *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). "The plea of course must be voluntary and knowing and if it was induced by promises, the essence of those promises must in some way be known." *Santobello v. New York*, 404 U.S. 257, 261-62, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). "Assent of parties to a contract must comprise all terms which they introduce into it; there is no contract where material terms are left for future adjustment, or are not agreed upon." *Solis v. Evans*, 951 S.W.2d 44 (Tex. App.—Corpus Christi 1997).

G)    "…[W]e would decline to acknowledge and reward such conduct in light of the high standard of fair dealing we expect from prosecutors…."

*U.S. v. De la Fuente*, 8 F.3d 1333, 1340 (9th Cir. 1993). "The most meticulous standards of both promise and performance must be met by prosecutors engaging in plea bargaining." *Correale v. U.S.*, 479 F.2d 944, 947 (1st Cir. 1973). "We have cautioned the Government to avoid narrow interpretation of language within a plea agreement where such construction would violate the spirit of the agreement." *U.S. v. Giorgi*, 840 F.2d 1022, 1026 (1st Cir. 1988). "A plea agreement is not an appropriate context for the Government to resort to a rigidly literal approach in the construction of language." *Id.* at 1026, quoting *U.S. v. Bowler*, 585 F.2d 851, 854 (7th Cir. 1978). Basically, a covenant of good faith and fair dealing is incorporated into every plea agreement contract owing to the inordinate bargaining power that the state has, the special relationship necessary to carry out the bargain, and the high expectations of conduct that are required of the State towards its citizens. Additionally, with Due Process concerns in mind, a rigid literal interpretation of terms is not acceptable if they violate the spirit of an agreement or prevent implementation of obligations. A prosecutor simply must strictly adhere to the agreement's terms.

"If a defendant pleads guilty as part of a plea agreement, the Government must strictly adhere to the terms and conditions of its promises in the agreement." *U.S. v. Munoz*, 408 F.3d 222, 226 (5th Cir. 2005). "Lack of good faith exists when a party has actual knowledge of facts that when acted upon constitute dishonest disregard of the contractual rights of another party…." V.T.C.A., Bus. & C. §1.201(b)(20); *All American Siding & Windows, Inc. v. Bank of America Nat. Ass'n*, 367 S.W.3d 490 (Tex. App.—Texarkana 2012).

Here yet again is a provision included in every plea agreement whether express or implied. A four-corners construction is but a starting point, and not a means to an end. To do so, as was done in this case, would exclude the defendant's reasonable understanding, State's conduct consistent therewith, the laws and constitutions as they existed at formation, and the covenant of good faith and fair dealing. Are these not contained in my agreement? The 1994 plea agreement between the State and myself had a merger clause; obvious boilerplate.

**Application of Canons of Plea Agreement Construction to This Case**

The parties are obligated to make their performances in compliance with the status of the laws as they existed at formation, and the Contract Clause (U.S. CONST. Art. 1, § 10, cl. 1 and TEX. CONST. Art 1, § 16) prevents the impairment of these fixed obligations through the retroactive application of subsequent law. Such would additionally be violative of this Petitioner's Due Process rights (U.S. CONST. Fourteenth Amendment) and his right to the Due Course of the laws of the Land (TEX. CONST. Art. 1, §§ 13 & 19).

The first such law is the relevant statute of limitations as promulgated by the 70th Legislature in 1987. It was the law in existence at formation and applied to the cases listed in Exhibit A of the contract. They gave a default value and created a boundary to prosecution that was relied on. Complete amnesty was bargained for, but rejected. The amnesty conditioned upon the passage of time was then agreed to by the parties; there is no disclaimer and if the State had wanted more time to prosecute the cases, as drafter, they could have included that into the agreement. As it was, they agreed to the then limits as acceptable. "Statutes of limitations are acts of grace in that sovereign surrenders its right to prose-

cute, or right to prosecute at its discretion, and they are thus to be considered acts of amnesty." *Ex parte Matthews*, 933 S.W.2d 134 (Tex. Crim. App. 1996). They are legislatively defined and certain for a given situation such as contract negotiations. When the plea bargain was accepted by the 292nd District Court on April 18, 1994, the limitations became fixed substantive rights for any case known to the State. To say that a variable limitations, as the State and its lower courts have so far maintained, applies to this agreement is absurdity and sophistry. An agreement must be entered into knowingly, voluntarily, and intelligently with the defendant aware of the value of his and the State's commitments. Changing the limitations, which were part of the consideration and quid pro quo of this contract, whenever to whatever and as many times as desired on a unilateral, post-hoc basis would likely not be allowed in a commercial contract, and certainly has no place in a constitutionally-minded plea agreement. Note that these limitations go not to the enforcement of the agreement and as such would be procedural. These limitations were part of the agreement and are thus vested rights. In *Ex Parte Moussazadeh*, 361 S.W.3d 684 (Tex. Crim. App. 2012), the Applicant received relief based on an incorrect understanding of legislatively defined law fixed at the

commission of the offense. I seek relief based on my correct and reasonable understanding of legislatively defined law which became fixed at contract formation.

On a previous attempt, the court of appeals almost construed this provision correctly. *See Warterfield v. State*, 05-13-00017-CR, 2014 WL 4217837 (Tex. App —Dallas Aug. 27, 2014). The court correctly acknowledged the general incorporation of laws in existence at contract formation. They then undermined this correct determination by not correctly applying the incorporated contract clauses into their interpretation. "Additionally, to the extent that we must read the plea agreement as a contract that generally incorporated the laws that existed in 1994, the law at that time also permitted the legislature to extend the limitations for a crime that had yet to become time barred." *Id.* at 5. Indeed, any law can be written, amended, or abolished so long as it is done within constitutional bounds. It is the constitutional boundary crated by the Contract Clause that prevents such an application in this instance.

Additionally and alternately, the subsequent warrant law at the time was part of the agreement for the cases acknowledged by the State. (Tex. Code Crim. P. art. 18.01 et seq. as existed in 1994). If correctly

construed, this would have prohibited the State from obtaining the buccal swab in 2010 and restricted the warrants used to prosecute to the fatally flawed DNA warrant from Sep. 2, 1992. A further restriction on the warrant obtained in 2010, and briefed to the court of appeals involves the construing of paragraph two of the agreement. The spirit of the agreement and what was told to me by my attorney at the time, Mr. Jeff Pierce, was that what I was pleading guilty to in cause no. 93-4772 could not be used to prosecute any of the cases bargained on. Period. Thus, the term "conviction" as used and intended by the parties and reasonably understood through the advice of counsel meant the plea bargain case in its entirety. By using the 1992 warrants as probable cause to obtain the 2010 warrants is in violation of the agreement and has been sustained through a narrow, rigid and legalistic interpretation. It violates the very foundation of the agreement in a case that was ripe for dismissal. If not for such an agreement by the State and conveyed to me by my attorney, I would never have pled guilty. Cause no. 93-4772 and all that it contained was prohibited from being used in any way to facilitate the prosecution of any case acknowledged by the State.

Besides the defendant's reasonable understanding regarding the laws in existence, the spirits of the case being that what I was pleading guilty to could not be used to prosecute other cases, this Honorable Court may wish to consider conduct by the State consistent with these reasonable understandings. The State did not attempt to prosecute these cases in violation of the agreement's provisions as reasonably understood by the defendant for 16 years. As for the statute of limitations issue, evidence from cause no. 93-4772 was destroyed on Oct. 1, 1999. *See* Exhibit B. This destruction occurred on exactly the expiration of the applicable limits as existed at formation for the present case. This offense date is Oct. 1, 1989. The critical point is that this destruction occurred two years after there had been an amendment to the laws in existence at formation. That would have indicated preservation. However, the State's conduct was consistent with the defendant's reasonable understanding that the limitations had and did expire for this case on Oct. 1, 1999. The current Code of Criminal Procedure Article 38.43(c)(1) states, regarding evidence preservation, "for not less than 40 years, or until the applicable statute of limitations has expired…." The applicable limitations for this case was settled and fixed per the contract. Evidence for cause no. 93-4772 was

for a plea agreement case, and would have been long destroyed before 1999, except as it may have served the ends of justice in the only other case thought to have me as a suspect and thought of at the time as viable.

I ask this Honorable Court to not only enforce this agreement with this understanding and intent of the parties in mind, but also if it would take the time in analyzing the State's breaches to discover the following: (1) When was the evidence destroyed in this or any other case listed in Exhibit A, and was that destruction in conformity with the 70th Legislature's promulgation of the statute of limitations as existed at contract's formation? (2) Did the prosecutor use the 1994 conviction, even in the narrowest, rigid definition, during the grand jury proceedings in order to get an indictment for this case? That would violate paragraph two. Again, I ask that any prosecution initiated and sustained through a breach of a plea agreement to be considered a structural error.

## II.   GROUND TWO

**The Court of Appeals erred in its ruling that the trial court did not abuse its discretion in recalling witnesses Fitzwater and Ramirez. I did not and do not waive this error because of a failure to brief. The appellate attorney in this case, Erin B. Healy, was ineffective in her representation on numerous fronts, and this is just another example. When briefed properly and fully**

**considered, this claim would entitle me to relief from the conviction.**

The appellate attorney became uncommunicative an very obtuse for several months before the filing of the direct appeal. Because of her, this claim has not been properly briefed. The trial court experienced but a minor dose of her aloofness during the investigation for this out-of-time PDR; it was finally remedied through that court's power of subpoena. She changed her address and did not notify myself or the appeals court. For basically 4 or 5 months she was unable to give or receive communication as attempted by my mother, brother, and myself, both written and telephone. Simply, I did not and do not waive this claim, however technically and legalistically that may be, and hereby assert that because of ineffective assistance of appellate counsel and in the interests of justice that it now be considered.

Broadly, the term in Tex. Code Crim. P. Art. 36.02 "due administration of justice" is unconstitutionally vague to the point that it does not give a person in the position of Judge Snipes correct guidance as to what course of conduct is or is not proper in any situation. Alternately, Art.

36.02 is unconstitutional as-applied in this situation. *See Peek v. State*, 106 S.W.3d 72 (Tex. Crim. App. 2003).

Specifically, "trial court abuses its discretion if it refuses to reopen a case when the following conditions are met: (1) The witness was present and ready to testify, (2) the request to reopen was made before the charge was read to the jury and final arguments were made, (3) the court has some indication of what the testimony would have been, and was satisfied that the testimony was material and bore directly on the main issues in the case, and (4) there was no showing that the introduction of the testimony would have impeded the trial, or interfered with the due administration of justice." *Doyle v. State*, 24 S.W.3d 598 (Tex. App.—Corpus Christi 2000); *Scott v. State*, 597 S.W.2d 755 (Tex. Crim. App. 1979). The converse must then also be true; that is, if any of the four requisites is not met, then a trial judge DOES abuse their discretion in recalling a witness under Tex. Code Crim. P. Art. 36.02. In this case, three out of the four requisites are found to be lacking.

As for being present and ready to testify, Ramirez was "permanently excused" and not subject to recall. Fitzwater had returned to work at SWIFS. Finally, even if these two witnesses were present and ready,

the defendant's expert witnesses were present and ready, the defendant's expert witness retained to consult with during said witness's testimony, had returned to Denton, Texas some two hours distant. In fact, before he had left, and contrary to any portions of the record taken out of context by the court of appeals, the State, defendant's counsel, and the trial court had conferenced and concluded that he was no longer required. These witnesses' had been completed, were permanently excused, and any parts of the record taken out of context is sophistry.

Additionally and alternately, requisite three is not satisfied. The State failed to satisfactorily indicate what the testimony would have been, that it was material, and bore directly on the main issues of the case. It was unclear before their recall that the additional testimony would not be merely cumulative or that it would have made the critical difference in the result of the case.

Finally and alternately, as to the four requisites, supra, the reopening impeded the trial's progress and interfered with the due administration of justice. The State would have been done with its case-in-chief, and, as such, was done without reopening. Recalling the witnesses incalculably interfered with the Defendant's case and litigation strategy. As

the judge stated succinctly, "Their testimony should have happened, but did not." This error, when correctly and fully briefed warranted reversal of the conviction; it still does.

## III. GROUND THREE

**The State failed to prove beyond a reasonable doubt what the applicable statute of limitations was, and that this prosecution was properly within that limitation.**

The State is required to prove, and failed to do so, that the prosecution was conducted within the applicable statute of limitations. "Issue of limitations can be raised as challenge to the indictment or challenge to the sufficiency of the evidence." *Howlett v. State*, 946 S.W.2d 870 (Tex. App.—Eastland 1997); *see also Lemell v. State*, 915 S.W.2d 486 (Tex. Crim. App. 1995); *Proctor v. State*, 967 S.W.2d 840 (Tex. Crim. App. 1998). I ask that this Honorable Court of Criminal Appeals consider the record for this error and to treat it as fundamental.

## IV. GROUND FOUR

**The court of appeals erred in not reversing this conviction due to the trial court's failure to *sua sponte* give proper jury instructions in accordance with Tex. Code Crim. P. 38.23 after fact issues of legality or constitutionality of obtained evidence had**

**entered the record. Alternately, trial counsel was ineffective for not requesting the 38.23 instruction.**

After defense attorney Kim Meyer in her closing arguments made reference to there being no chain of custody for the t-shirt evidence, the fact issue required for a 38.23 instruction had been raised. *See West-brook v. State*, 29 S.W.3d 103 (Tex. Crim. App. 2000), cert. denied, *West-brook v. Texas*, 532 U.S. 944 (2001). The t-shirt was the only evidence linking the Appellant to this crime, and if the jury had been properly instruct, could reasonably have excluded it.

## V. GROUND FIVE

**The court of appeals failed to identify Ex Post Facto Clause violations and remedy those errors.**

This offense date is October 1, 1989. The offense charged and which framed this prosecution was "Aggravated sexual assault of a child under 14." That particular offense was not effective until sometime in 1993. The previous version, in effect when the crime occurred, was "Aggravated sexual assault of a child." This is not just a matter of semantics. There are significant differences. The 1989 version included the lesser-included non-aggravated offense(s) and their possibility of proba-

36

tion. This was eliminated with the 1993 version of the offense. Furthermore, the 1993 version altered the rules of evidence necessary to convict someone for the offense by adding the element "under 14." These circumstances and facts fit the offense charged and prosecuted under as violating one or more of the four categories set out in *Calder v. Bull*, 3 U.S. 386, 390 (1798) and *Carmell v. Texas*, 529 U.S. 513, 521-33 (2000) (describing Calder's four categories as the relevant framework in analyzing an ex post facto issue). I bring this claim under both U.S. and Texas Constitutions.

The extending of the statute of limitations as examined in *Stogner v. California*, 123 S.Ct. 2446 (2003) examined the amendment from the original statute just one time. In this case, which I now ask this Court to consider as different, the limitations was amended several times. I contend that such a process occurring, all the while the case is growing beyond stale and evidence is lost or purposefully destroyed (in accordance with prior limitations!) is not acceptable Due Process under the Fourteenth Amendment, nor Due Course of the law of the land (TEX. CONST. ART. 1, §§ 13, 19) and in violation of the Ex Post Facto Clauses.

In addition to moving the finish line, for which both the State and a suspect deal with, the amendments in this situation took what was once a defense to prosecution and completely removed it. Is the complete removal of a defense that once existed a constitutional law? Is it ex post facto?

The third area of Ex Post Facto Clause violations involves the aforementioned breaches of the plea agreement. This would further allow this Court to consider breaches of the plea agreement raised for the first time in this petition. "State constitutional prohibition against ex post facto laws include retroactive application of law that destroys or impairs vested rights." *Jordan v. State*, 56 S.W.3d 326 (Tex. App.—Houston [1st Dist.] 2001). "Statute is retroactive and thus prohibited, if it impairs vested rights acquired under existing laws." *Hicks v. Humble Oil & Refining Co.*, 970 S.W.2d 90 (Tex. App.—Houston [14th Dist.] 1998). "The Ex Post Facto Clause limits the powers of the Legislature and does not, of its own force, apply to the judiciary, but limitations on ex post facto judicial decisions are inherent in the notion of due process." *Proctor v. Cockrell*, 283 F.3d 726 (7th Cir. 2002).

## CONCLUSION

In exchange for Mr. Warterfield's guilty plea in 1994, the State made several agreements and promises. Several of these have been breached. The contract included the laws in existence at the time of formation as fixed provisions that amount to vested substantive rights. The spirit of the agreement was that if he pled guilty (and did) that what he pled guilty to could not be used against him to facilitate the prosecution of the cases listed in the agreement. That was his reasonable understanding and the State's conduct is consistent therewith up until 2010. By waiving his challenge to the fatally flawed 1992 warrants, he was assured by counsel that in doing so that it would only affect cause no. 93-4772. Nothing from that case/conviction was to be used as "an extraneous offense or act" in any subsequent case. The laws in existence at formation also prevent a subsequent warrant for the cases listed. The analogue situation would be that if a sporting match was played on April 18, 1994, the rules at the time, though not on the scoreboard, were as much a part of the result as the players. To change those rules years later, retroactively apply, and amend the results would be absurdity. Same here. The rules are the laws then in existence. Subsequent amendment does not

apply.  The courts below have misconstrued the agreement by not applying contract and canons of plea agreement construction correctly.  The result has been the abrogation of Mr. Warterfield's vested rights by the State, and an undermining of the rule of law.

"There is more at stake than just the liberty of this defendant.  At stake is the honor of the government, public confidence in the fair administration of justice and the efficient administration of justice."  *U.S. v. Carter*, 454 F.2d 426, 428 (4th Cir. 1972).  I ask this Court to end the abrogation with vindication.  Additionally, the court of appeals condoned the recall of witnesses, which was an abuse of discretion by the trial court as reflected by the facts in the record.  The correct limitations evidence was insufficient in order for the court of appeals to sustain this conviction.  The jury instruction was so flawed as to negatively affect Appellant's Due Process.  Finally and assuredly, the offense charged and trial conducted under was a violation of the Ex Post Facto Clause.  A reversal of the conviction is warranted based upon several grounds the court of appeals erred in not doing so.

## PRAYER

Accordingly, Mr. Warterfield respectfully prays for and requests that this Honorable Court grant this petition so that it can reverse the court of appeals's decision and remand for proceedings consistent with this High Court's orders.

Respectfully submitted,

_/s/ Robert Tracy Warterfield_
Robert Tracy Warterfield, pro se
#182999 Clements Unit
9601 Spur 591
Amarillo, TX 79107-9606

## Certificate of Service

I, the undersigned, hereby certify that a true and correct copy of the foregoing Appellant's Petition for Discretionary Review was served to the Dallas County District Attorney's Office and the State Prosecuting Attorney on November 20, 2015.

    /s/ Robert Tracy Warterfield
Robert Tracy Warterfield

## Certificate of Compliance

Pursuant to Tex. R. App. P. 9.4(i)(3), undersigned appellant certifies that this brief complies with:

1. The type-volume limitation of Tex. R. App. P. 9.4(i)(2)(D) because this petition contains 5,668 words, excluding the parts of the brief exempted by Rule 9.4(i)(1).

2. The typeface requirements of Tex. R. App. P. 9.4(e) and the type style requirements of Tex. R. App. P. 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011 in 14-point Century Schoolbook.

    /s/ Robert Tracy Warterfield
Robert Tracy Warterfield

# APPENDIX A



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-00646-CR**

**ROBERT TRACY WARTERFIELD, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 7**
**Dallas County, Texas**
**Trial Court Cause No. F10-61655-Y**

## OPINION

Before Justices FitzGerald, Francis, and Lewis
Opinion by Justice FitzGerald

A jury convicted appellant Robert Tracy Warterfield of aggravated sexual assault of a child and assessed punishment at life in prison. The trial judge rendered judgment in accordance with the jury verdict. Appellant timely appealed. We affirm.

### I. BACKGROUND

The trial in this case was held in January 2012, but the offense at issue in this case occurred in 1989. Using the pseudonym Kelly Gibson, the complainant testified to the following facts. In October 1989, she was seven years old. She lived in a house with her parents and five siblings. The night of September 30, 1989, after Gibson had gone to bed and gone to sleep, she woke up and realized that she had been picked up and was being carried. There was a pillowcase over her head. The person who was carrying her was speaking to her and telling her not to say

anything. At first she was half asleep, and she was not alarmed because she thought it was her grandfather's voice. Gradually she realized it was not her grandfather, and the person told her not to say anything or he would kill her. The person took her outside and set her down on the ground. He took the pillowcase off, but it was so dark that Gibson could not clearly see him. He told her to take her panties off, and she did. She felt touching, intense pressure, and pain around her vagina. Then the man put his penis in her mouth and told her to lick it until the pee came out. She complied, and he ejaculated into her mouth. Then the man left, and she ran back into her house. She went to the kitchen and rinsed her mouth out with water. She then told her parents what had happened, and the police came. She remembered that she was taken to the hospital, where they took her t-shirt away and gave her a physical examination.

Gibson's mother testified that the t-shirt Gibson was wearing at the time of the incident was given to the police.

Police officer Christine Ramirez testified that in October 2010 she obtained a search warrant relating to appellant and that she executed the search warrant the same day. Appellant was already under arrest at the time. Pursuant to the warrant, Ramirez took a saliva sample from appellant via a buccal swab. Ramirez then sent the sample to the Southwestern Institute of Forensic Science (SWIFS).

Angela Fitzwater, a forensic biologist at SWIFS, also testified at trial. She performed DNA testing on appellant's buccal swab and generated a report on the results. SWIFS had a t-shirt cutting that had been obtained in 1989 and stored in its archived evidence storage area. Fitzwater obtained a DNA profile from a sperm sample from a stain on the t-shirt cutting. The DNA profile from the t-shirt stain revealed a mixture of DNA from at least two people. The major contributor to the DNA mixture was a male, and it matched the DNA sample obtained from appellant. The probability of a random match was, conservatively, 1 in 4.09 quadrillion.

–2–

On cross-examination, Fitzwater testified that the DNA tests she performs in her job did not exist in 1989.

After the complainant testified, and over appellant's objection, the trial judge allowed the State to call officer Ramirez back to the stand. She confirmed that she did not remain in the courtroom after her previous testimony to hear any other witness's testimony. She testified to more details about her contact with appellant the day she executed the search warrant. She also explained the chain of custody of the buccal swab when she personally delivered it to SWIFS. Then the State called Fitzwater back to the stand. Fitzwater further explained where the items she tested for DNA are kept at SWIFS, in a freezer in the evidence registration unit. And she explained the SWIFS receipt and documentation of the t-shirt it had received on October 2, 1989. The DNA tests were performed on stains that were on parts of the t-shirt that were cut away from the shirt. The cuttings from the t-shirt are still available today. Fitzwater also testified that the complainant's DNA was also found on the t-shirt samples.

The State rested, and appellant moved for an instructed verdict, which the trial judge denied. Appellant then rested without putting on any evidence, and both sides closed. The jury found appellant guilty. After the punishment phase of the trial, the jury assessed punishment at life in prison. The judge rendered judgment on the jury's verdict, and appellant appealed.

## II. ANALYSIS

Appellant raises six issues on appeal.

### A. Prior plea agreement

In his first issue on appeal, appellant argues that a 1994 plea bargain he entered into barred the State from prosecuting him in the instant case, or at least precluded the State from offering into the evidence the DNA evidence identifying him as the perpetrator of the assault in question.

Some additional facts must be discussed to put appellant's first issue into context. In the instant case, appellant made pretrial motions to dismiss and to suppress evidence based on a 1994 plea bargain. Appellant introduced some relevant documents into evidence at a pretrial hearing, and they were discussed in more detail at a later pretrial hearing. The documents indicate that appellant was charged with sexual assault and aggravated sexual assault in Dallas County in cause number 93-43772. That case involved a different complainant from the instant case. The documents include a "Plea Bargain Agreement" in which appellant agreed to plead guilty and the State agreed to recommend a sentence of ten years' imprisonment and probation of the entire sentence. The agreement is supplemented with a separate document containing the following three paragraphs:

1.  The prosecutor agrees that this conviction will not be used for impeachment of the Defendant should he testify in any subsequent case of which the prosecutor has knowledge. (Exhibit "A").

2.  Prosecutor agrees this conviction will not be used as an extraneous offense or act against the Defendant in any subsequent case of which the prosecution has knowledge. (Exhibit "A")

3.  The Prosecutor agrees that this conviction will not be used in the punishment phase of any subsequent case of which the prosecution has knowledge. (Exhibit "A").

Exhibit A is a piece of paper on which two columns of numbers are handwritten. The first column has a heading "Incident Date" and the second column has a heading "Service #." One of the incident dates is "10/1/89," which corresponds to the date of the offense in this case. That incident is listed with the service number "691635-X." Appellant's name is handwritten at the bottom of Exhibit A, and it appears to be his signature. Both the plea agreement and the supplemental plea bargain appear to be dated April 1994.

Although appellant invokes "collateral estoppel" in his statement of his first issue, his argument under that issue actually refers to "estoppel by contract." *See Rhodes v. State*, 240

–4–

S.W.3d 882, 891–92 (Tex. Crim. App. 2007) (discussing estoppel by contract). In the context of that case, the court held that a defendant could not collaterally attack an agreed judgment that imposed an illegally lenient sentence after enjoying the benefits of that agreed judgment. *Id.* Here, appellant appears to argue that the State is estopped from prosecuting him for the instant offense because in the supplemental plea bargain in cause no. 93-43772, the State agreed it would not do so. But that is not what the supplemental plea bargain says. In that document the State agreed only that "this conviction"—that is, the conviction in cause no. 93-43772—would not be used for impeachment of appellant, as an extraneous offense against appellant, or in the punishment phase of any subsequent case of which the prosecution had knowledge. The State did not agree not to bring charges based on the incidents listed in Exhibit A. Exhibit A appears to be merely a list of potential cases against appellant, attached to the supplemental plea bargain for the purpose of identifying the potential cases of which the State had knowledge. Appellant does not direct our attention to any improper use of his 1994 conviction in the instant case, and we see none.

Appellant also asserts that there are "Fourth Amendment issues" arising from the State's conduct in this case and the 1994 supplemental plea bargain. He seems to argue that (1) the State agreed not to use any materials related to the 1994 case in any of the subsequent cases listed in Exhibit A, (2) when the State got its search warrant in the instant case, it relied in part on a DNA sample taken from appellant in the 1994 case, (3) without the DNA sample from the 1994 case, the State would have lacked probable cause to get the search warrant in this case, and so (4) the State's reliance on the 1994 DNA sample in this case violated the supplemental plea bargain, and its search warrant in this case violated the Fourth Amendment. Without conceding the validity of appellant's logic, we reject his argument because the 1994 supplemental plea bargain did not bar the State from using any and all materials related to cause no. 93-43772. It

barred the State only from using the "conviction" in that case for certain specified purposes. Even if the State did use materials obtained in the investigation of cause no. 93-43772 to support its search-warrant application in this case, that use did not violate the terms of the supplemental plea bargain.

Appellant's first issue on appeal is without merit.

## B.    Allowing the State to recall witnesses

In his second issue on appeal, appellant argues that the trial judge erred by allowing the State to recall two witnesses who had already testified and been excused. The record shows that at the conclusion of officer Ramirez's initial testimony, the trial judge asked whether she could be "permanently excused." The prosecutor said, "Yes," and the judge told officer Ramirez, "You're permanently excused, ma'am." Fitzwater testified next. At the conclusion of Fitzwater's initial testimony, the trial judge asked whether she could be permanently excused. The prosecutor answered, "Yes, sir. Well, Judge, just in case—." The trial judge then said, "Just remain available, ma'am, but you're excused for the moment." Then the complainant testified. After the complainant testified, the State sought to recall officer Ramirez. Appellant objected, and the trial judge overruled the objection and allowed the State to elicit additional testimony from Ramirez. The judge then allowed the State to recall Fitzwater and elicit additional testimony from her. Appellant argues that these decisions constituted an abuse of discretion.

We conclude appellant has waived this issue by failing to adequately brief it. Failure to present argument or authorities in support of an assertion results in waiver of the issue. *Delapaz v. State*, 228 S.W.3d 183, 197 n.20 (Tex. App.—Dallas 2007, pet. ref'd); *see also Kiss v. State*, 316 S.W.3d 665, 667 (Tex. App.—Dallas 2009, pet. ref'd). Appellant asserts that the trial judge's decisions described above were, or at least could be, arbitrary and capricious. But appellant cites no authority establishing any rule or standard against which to judge the trial

judge's decisions. He cites no authority to explain the significance of "permanently excusing" a witness in this context. Nor does appellant propose any controlling rule or standard, or any factors that might apply to guide the trial judge's decisions in this context. Appellant simply asserts that the trial judge's decisions were abuses of discretion. This does not suffice. *See* TEX. R. APP. P. 38.1(i).

Even if we were to consider the merits of appellant's second issue, we would reject it. The State brings article 36.02 of the code of criminal procedure to our attention: "The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice." TEX. CODE CRIM. PROC. ANN. art. 36.02 (West 2007). In this case, the State sought to recall two of its witnesses, one of whom had been "permanently excused." At that time, the State had not yet rested. Appellant argued that he would be prejudiced if the State were allowed to recall its witnesses because he had released his consulting expert based on witness Fitzwater's having been permanently excused. But, as it turned out, only officer Ramirez had been permanently excused. Also, the trial judge assured appellant that the court would pay for the additional expense of having the consulting expert return to court, and it appears from the record that the consulting expert did in fact return to court for Fitzwater's additional testimony. When officer Ramirez was recalled to the stand, she testified that she had not remained in the courtroom after her initial testimony to hear any other witness's testimony. Under all these circumstances, we conclude that the trial judge did not abuse his discretion by allowing the State to recall Ramirez and Fitzwater to the stand. *Cf. Black v. State*, 362 S.W.3d 626, 633–36 (Tex. Crim. App. 2012) (discussing article 36.02 and holding trial judge had discretion to allow State to reopen motion-to-suppress hearing and adduce additional evidence on that issue).

We reject appellant's second issue on appeal.

–7–

## C.     Sufficiency of the evidence

In his third issue on appeal, appellant challenges the legal sufficiency of the evidence to support his conviction. In his fourth issue, he challenges the factual sufficiency of the evidence to support his conviction. In the wake of *Brooks v. State*, 323 S.W.3d 893, 894 (Tex. Crim. App. 2010) (plurality op.), we employ only one standard when reviewing the sufficiency of the evidence. *See Bell v. State*, 326 S.W.3d 716, 720 (Tex. App.—Dallas 2010, pet. dism'd). Under this standard, we consider all of the evidence in the light most favorable to the verdict and determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Id.* We defer to the jury's determinations of witness credibility and the weight to be given to witness testimony because the jury is the sole judge of those matters. *Id.*

Appellant's argument is that the evidence did not adequately show the chain of custody for the t-shirt that the complainant was allegedly wearing the night she was assaulted and that ultimately tested positive for appellant's DNA. The DNA test was the only evidence showing that appellant was the person who attacked the complainant. The State argues that the evidence was sufficient.

The complainant testified that she was wearing her brother's t-shirt the night of the attack. The complainant's mother also testified that the complainant was wearing her older brother's black t-shirt the night of the assault. She also testified that the police took the shirt as evidence. This was corroborated by hospital records. State's exhibit 28 is a redacted SWIFS report dated October 31, 1989. The report bears the notations "FL# 89P2361" and "DPD# 691635X," and, via redaction, the complainant's pseudonym Kelly Gibson. The report recites that SWIFS received a t-shirt from the police room lockbox on October 2, 1989, and that seminal fluid and spermatozoa were detected on the t-shirt. So this report connects the t-shirt to the complainant and to the listed identification numbers. State's exhibit 21 is a SWIFS report dated

–8–

November 9, 2010. It recites that SWIFS analyzed the newly obtained buccal swab sample from appellant[1] and compared his DNA profile to the previously analyzed samples taken from the t-shirt. This report references "Laboratory #: 89P2361-S1" and "Agency #: 691635X," which correspond to the identification numbers on exhibit 28. So the identification numbers on this report connect the t-shirt to the earlier lab report and to the complainant. The report also contains the conclusion that the "conservative random match probability" between appellant and the sperm cell fraction taken from the t-shirt is 1 in 4.09 quadrillion. The reports also show that the complainant's DNA was also present on the t-shirt, further serving to connect the t-shirt to the incident in question. Finally, Fitzwater testified that when evidence is submitted to the SWIFS laboratory, the case is assigned a unique forensic laboratory number, such as the 89P2361 number that appears on the reports. She confirmed that the t-shirt cutting that she tested was the cutting "that had been kept from 1989."

Viewing the evidence in the light most favorable to the verdict, we hold that a rational juror could conclude beyond a reasonable doubt that the t-shirt tested by SWIFS in 2010 was the t-shirt worn by the complainant on the night of the attack in 1989. A rational juror could also conclude beyond a reasonable doubt, based on the results of the 2010 DNA testing of the t-shirt, that appellant's DNA was present on the t-shirt, and thus that he committed the attack on the complainant.

Appellant's issues three and four are without merit.

**D.      Closing argument**

In his fifth issue on appeal, appellant argues that the State improperly asked the jury to punish appellant for exercising his right to a jury trial during the State's rebuttal closing

---

[1] The report misspelled appellant's last name as "Waterfield." This was corrected in January 4, 2011 report, which was admitted into evidence as State's exhibit 27.

argument after the punishment phase of the trial. The record shows the following argument and colloquy:

> [THE STATE]: May it please the Court. Counsel. I told you this was a case about catching predators and protecting children. This is the second part of that, protecting children. We talk about a life sentence. And I want to just point to you some of the things from the defense counsel first. He says, Let's fess up. He knew what the evidence was and you still pled not guilty.
>
> [DEFENSE COUNSEL]: Excuse me, Judge, we're going to object to that as instigating his right to have a jury trial.
>
> THE COURT: Response from the State?
>
> [THE STATE]: This is about the responsibility of the person and this is rebuttal to the argument that has been introduced by the defense.
>
> THE COURT: I'm going to sustain the objection. The jury will disregard that argument.
>
> [DEFENSE COUNSEL]: Judge, we ask for an instruction to disregard.
>
> THE COURT: I gave that.
>
> [DEFENSE COUNSEL]: And move for a mistrial.
>
> THE COURT: Denied.

Appellant contends that the trial judge erred by denying his motion for a mistrial.

It is improper for the State to argue that the jury should blame or punish a defendant for exercising his constitutional right to a jury trial. *Eason v. State*, No. 05-10-01232-CR, 2012 WL 2444780, at *3–4 & n.1 (Tex. App.—Dallas June 28, 2012, no pet.) (not designated for publication); *Carlock v. State*, 8 S.W.3d 717, 724 (Tex. App.—Waco 1999, pet. ref'd). Here, the trial judge sustained appellant's objection on that basis and instructed the jury to disregard the State's argument. The question is whether the judge erred by then denying appellant's motion for a mistrial. The standard of review is abuse of discretion. *Archie v. State*, 340 S.W.3d 734, 738–39 (Tex. Crim. App. 2011). We consider (1) the severity of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction given by the trial judge, and

–10–

(3) the likelihood of the same punishment's being assessed. *See id*. at 739; *see also Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). Mistrial is the proper remedy when the improper argument is so inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant. *Archie*, 340 S.W.3d at 739. A mistrial is required only in extreme circumstances, when the prejudice is incurable. *Hawkins*, 135 S.W.3d at 77.

We conclude that the trial judge did not abuse his discretion. As to the first factor, we agree with appellant that the prosecutor's argument could be construed as improperly criticizing appellant for invoking his right to a jury trial. But the argument was brief and isolated, and it was not couched in particularly inflammatory terms. The argument is somewhat similar to the one made in *Carlock*, and in that case the court of appeals characterized the argument as "not extreme or manifestly improper." 8 S.W.3d at 723–24. As to the second factor, the trial judge promptly instructed the jury to disregard the argument, even before appellant could request this relief. As to the third factor, the jury assessed the maximum penalty against appellant, but the crime he committed was heinous, and a number of witnesses testified to appellant's bad character or bad reputation during the punishment phase of the trial. The evidence was a "much more likely reason for the lengthy sentence," *Hawkins*, 135 S.W.3d at 85, than a brief improper argument that the jury was promptly told to disregard.

In sum, this case does not present extreme circumstances in which the prejudice was incurable. We reject appellant's fifth issue on appeal.

## E. Cumulative error

In his sixth and final issue, appellant argues that we should reverse his conviction in the interest of justice due to the prejudicial effect of cumulative error during trial. We have rejected all claims of error raised by appellant in this appeal. Accordingly, we also reject his claim of

cumulative error. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) ("[W]e are aware of no authority holding that non-errors may in their cumulative effect cause error.").

### III.   CONCLUSION

For the foregoing reason, we affirm the trial court's judgment.


/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE


Do not Publish
TEX. R. APP. P. 47
120646F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

**JUDGMENT**

ROBERT TRACY WARTERFIELD,
Appellant

No. 05-12-00646-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 7, Dallas County, Texas
Trial Court Cause No. F10-61655-Y.
Opinion delivered by Justice FitzGerald.
Justices Francis and Lewis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered July 31, 2013

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE

–13–